ROBERTSON, Justice:
The appellant, E. P. Stegall, was given written notice of his suspension and removal as Principal of the Brandon Attendance Center by the appellee, C. W. Jones, Rankin County Superintendent of Education. In the notice he was advised of his right to a public hearing before the County Superintendent, pursuant to the provisions of § 6282-26, Miss.Code of 1942 Annotated (Supp.1968).
The appellant employed an attorney, and even though a transcript of the testimony was not required under the statute, by agreement of counsel, a complete transcript of the testimony, both oral and documentary, given at the public hearing before the County Superintendent on June 10, 1969, was made.
The County Superintendent found the appellant guilty of the six charges against him and removed him from office. The appellant appealed to the state board of education, and that Board, composed of the State Superintendent of Education, the Attorney General, and the Secretary of State, affirmed the Order of the County Superintendent. Appellant then appealed to the Chancery Court of Rankin County, as provided in § 6282-26 supra. That court, in a written opinion, affirmed the order of the State Board of Education which had affirmed the Order of the County Superintendent removing the appellant from his office as Principal of the Brandon Attendance Center. The appellant thereupon appealed to this Court.
At its Extraordinary Session of 1953, the Mississippi Legislature passed a comprehensive school law providing additional safeguards for professional educators.
Before the enactment in 1953 of this comprehensive school law, Sec. 6262, Miss. Code of 1942 Annotated (1952), covered the removal from office of any teacher or trustee. That section provided:
“For incompetency, neglect of duty, immoral conduct, or other disqualifications, the county superintendent may suspend or remove any teacher or trustee from office in any school district. For the purpose of conducting inquiries and trials, the superintendent has the same power as a justice of the peace to issue subpoenas for witnesses and to compel their attendance and the giving of evidence by them. Appeals may be had as provided in the following section on revoking teachers’ license. When from such cause, or from death, resignation, or other cause, a vacancy in either of the above named offices occurs, it shall be the duty of the county superintendent, within ten days after the vacancy occurs, or as soon thereafter as is practicable, to supply the same by appointment.” (Emphasis added).
Sec. 6263, referred to in Sec. 6262, provided the only method of appeal from the county superintendent’s ruling. It was a very short section in these words:
“For intemperance, immoral conduct, brutal treatment of a pupil, or other good cause, the county superintendent may revoke the license, state or county, of a teacher; but the teacher or those opposed to the teacher shall be allowed an appeal to the state board of education, to whom statements, under oath, of the facts may be made by the county superintendent and other interested parties. The teachers must be notified of the charges ten days before the trial, by the county superintendent.” (Emphasis added).
Sec. 6282-26, Miss.Code of 1942 Annotated (Supp.1968), combined Sections 6262 and 6263, supra, and granted additional safeguards to a suspended or removed superintendent, principal or teacher.
That Sec. 6282-26 said:
“For incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause the county superintendent of education or superintendent of the municipal separate school district, as the case may be, *351 may remove or suspend any superintendent, principal or teacher in any school district, but before being so removed or suspended the superintendent, principal, or teacher shall be notified of the charges against him and he shall be advised that he is entitled to a public hearing upon said charges at a date to be fixed in such notice. The notice shall be in writing and shall be given at least ten (10) days before the date fixed therein for the hearing. For the purpose of conducting such hearings the county superintendent of education or the superintendent of the municipal separate school district shall have the same power as a justice of the- peace to issue subpoenas for witnesses and to compel their attendance and the giving of evidence by them. From the decision made at said hearing the superintendent, principal or teacher and those persons opposed to such principal, superintendent or teacher shall be allowed an appeal to the state board of education and for the purpose of such appeal either oral or written statements, under oath, of the facts may be made by the county superintendent of education or the municipal separate school district superintendent and the other interested parties. Any party aggrieved by the said ruling of the state board of education may effect an appeal therefrom to the chancery court in the same manner as appeals from the state education finance commission. When a superintendent, principal or teacher is removed as provided in this section the county superintendent or the municipal separate school district superintendent shall notify the board of trustees of the school district involved and a superintendent, principal or teacher shall be selected to fill such vacancy in the manner otherwise provided in this act.” (Emphasis added).
It will be noted that Sec. 6282-26 provided for the first time for a public hearing to the suspended or removed educator. Not only did it bring forward the right of appeal to the state board of education, but it added still another right of appeal “to the chancery court in the same manner as appeals from the state education finance commission.”
The appeal to this Court affords to the appellant the third careful review of the order of the county superintendent removing him from office entered after the public hearing on June 10, 1969. Additionally we have the benefit of the full transcript of the evidence, pleadings and judgments consisting of 192 pages of record.
The written contract of employment signed by appellant and appellee on July 29, 1968, contained the following promise and obligation:
“2. That the said person hereby accepts such employment and obligates himself to perform such duties as are required by law or by the board of trustees of the said school district, and to perform his duties in said position in a satisfactory manner and in accordance with the policies, rules, and regulations of the State Board of Education, County Board of Education and/or the board of trustees of said school district.” (Emphasis added).
The Revised Policies of the Rankin County Board of Education, a copy of which was delivered to appellant at the time of his employment, provided:
“The Principals of each Attendance Center in the County shall work directly under and be responsible to the County Superintendent of Education. They are charged with the supervision of instruction and staff at their Attendance Centers, proper spending and accounting of all funds in their budgets, and in making audited reports to the County Office. All Principals shall be bonded. The Attendance Center Principal shall be responsible for the maintenance of the school plant and equipment; sanitation and cleanliness of buildings; care of grounds, buildings, equipment, textbooks, and cleanliness of buses; morals of per- *352 sonnet and pupils; and any other phase of the school program which should receive attention.
* * . * * * *
“7. Purchasing—
“All supplies and equipment for schools shall be purchased upon competitive bids except in emergencies as defined in the statute. These written bids will be on file in the County Superintendent’s office and shall be open for inspection at all times. Principals may place orders for supplies and equipment providing:
“(a) they do not exceed their budgets. (In case of emergencies shifting of funds within the budgets may be made by the County Superintendent.) (b) they purchase only from companies having lowest and best bids approved and on file in the County Office (c) and that for any emergency item, including repairs, amounting to $250.00 to $750.00, the Principal shall request the Board member to sign an emergency form and at least two bids shall be received before purchase or repairs are made.
sj: jjc >}í >jt jj; %
“21. Budgets—
“All Attendance Center Principals shall be responsible for completing and filing with the County Superintendent a proposed budget for the following school year prior to June 1. All expenditures should be explained in detail.
>¡c >{« if; iji % if:
“NO ATTENDANCE CENTER PRINCIPAL SHALL EXCEED HIS BUDGET.
“22. Mileage—
“No principal or teacher shall be reimbursed for car expense incurred by the regular performance of his or her duties from any school fund whatever. For extracurricular trips and others approved by the County Superintendent, reimbursement may be made from School Activity Funds, not exceeding Seven Cents per mile." (Emphasis added).
The first infraction of these Board policies was the using of the school’s gasoline in the appellant’s private automobile. A school bus driver testified that she saw the appellant filling up his private car at the school gasoline pump. The appellant testified that he had not taken over 50 gallons from the public pump and that he had used his private automobile: to check out and inspect school bus routes, to pick up supplies in Jackson, and to take his family to Vicksburg to see a football game between Brandon and Vicksburg high schools. When the County Superintendent advised him that this should not be done, he quit using public gasoline in his private car.
The next charge against the appellant was that he purchased a mowing machine for $796.25 without taking competitive bids thereon as required in the written policies of the Rankin County School Board. The appellant admitted that he did not take bids but that the Yazoo Manufacturing Company was on the State-approved list and he bought it at the State-approved price.
The next charge was that the appellant had used the telephone in the principal’s office and the telephone in his home to make personal long distance calls at the expense of the countywide school district of Rankin County. Appellant admitted these personal long distance calls, admitted that as principal he approved these telephone bills for payment, and admitted that he knew that these bills would be paid with public funds. These long distance calls totalled $180.10 charged to his home phone, and $138.92 charged to his office phone. He contended at the public hearing that he thought these were covered by this language in his contract: “plus teacher’s home with utilities furnished.”
The fifth charge concerned purchases of material under a Title II Project which *353 were “not eligible for re-imbursement under the regulations of said project resulting in substantial financial loss to the Brandon Attendance Center and the County Wide School District of Rankin County, Mississippi.”
The Coordinator of Title II, ESEA in the State Department of Education turned down $443.58 of purchases under Title II, and the Rankin County School Board had to exceed its budget to pay for these disallowed items.
The principal of an Attendance Center has many duties and responsibilities. He has a large faculty and administrative staff that work under his supervision and control. He is ultimately responsible for the morals, conduct and behavior of a large student body. All of the principals and superintendents of schools in the entire county work under the County Superintendent of Education. He must have trust and confidence in all of his principals of schools and rely upon their sound judgment and discretion. He cannot possibly weigh and analyze every exercise of judgment and discretion by a principal.
Each principal must by precept and example lead and instruct all of the teachers and administrative personnel under him.
We are confronted in this case with at least four serious mistakes of judgment and discretion on the part of appellant. It appears at times that he acted with a studied indifference to the written policies of his employer, the Rankin County Board of Education.
We cannot say that his employer, the County Board of Education, was not justified in gradually losing trust and confidence in the correctness of his decisions.
There was substantial evidence supporting at least four of the charges made against appellant; indeed, he admitted four of the six charges. Finding substantial evidence to support the Order of the County Superintendent of Education, the affirmance of that order by the State Board of Education, and the affirmance of its order by the chancery court of Rankin County, we affirm the judgment of the chancery court.
Affirmed.
GILLESPIE, P. J., and RODGERS, BRADY, PATTERSON and INZER, JJ., concur.
ETHRIDGE, C. J., and JONES and SMITH, JJ., dissent.