492 So.2d 277 (1986)
Douglas EVERETT
v.
BOARD OF TRUSTEES OF THE MERIDIAN MUNICIPAL SEPARATE SCHOOL DISTRICT.
No. 55735.
Supreme Court of Mississippi.
July 16, 1986.
*278 William B. Jacob, Meridian, for appellant.
John G. Compton, Witherspoon & Compton, Meridian, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
DAN M. LEE, Justice, for the Court:
On August 16, 1982, George D. Cannon, Superintendent of the Meridian Municipal Separate School District, suspended Douglas Everett from his duties as maintenance supervisor for the school district. Everett received notice of this suspension by letter dated August 19, 1982, and the letter informed him that he would be terminated, effective September 16, 1982. The letter also informed Everett that, if he requested a hearing before the Board of Trustees, he would receive more detail concerning the charges brought against him, which resulted in his termination.
Everett did request a hearing before the Board of Trustees. In response to that request, Cannon sent to Everett a letter outlining 15 specific charges which resulted in his termination. On September 10, 1982, Everett requested a continuance of the date set for the hearing because of illness. A hearing was ultimately held before the board of trustees on January 24-26, 1983.
The board of trustees made specific findings that several of the charges were supported by substantial evidence. The board concluded that: Dr. Cannon had the power to suspend and terminate Dr. Everett, that Dr. Cannon made a proper employment decision in terminating Dr. Everett, that Dr. Everett was recalcitrant and uncooperative, that Dr. Everett was incompetent in the performance of his duties, and that Dr. Everett's actions and non-actions were not in the best interest of the school district.
Dr. Everett appealed this decision to the Chancery Court of Lauderdale County. The chancery court found that the board's proceedings were conducted under Miss. Code Ann. § 37-9-59 (Supp. 1985), which covers the procedure for suspension of a teacher or principal. Since Dr. Everett was not a teacher or principal, he was not covered by the statute. However, the court noted that no objection was made to the procedure at the time of the hearing. The court held that Everett was not entitled to the benefits of the section, but that he was entitled to a hearing because of the holding in Cantrell v. Vickers, 495 F. Supp. 195 (N.D.Miss. 1980). The court held that, since the school board had given Everett a hearing under the statute, Everett was entitled to the statutory appeal.
The chancery court refused to uphold the termination on certain grounds presented by the school board, for the reason that the evidence presented on those grounds concerned events transpiring before the execution of Dr. Everett's latest contract. However, the court found substantial evidence existing for termination on the basis of other charges. The chancery court sustained the decision of the board of trustees, and we affirm that decision.

FACTS
In early 1982, the Meridian School District was faced with a budget crunch. In order to alleviate the financial problems, the administration determined that some administrative jobs would have to be eliminated. To effect that elimination, the *279 duties of Pupil Personnel Services were transferred from Dr. Everett to Dr. James Hefter. Dr. Everett was instructed to replace Phillips Garrison, the supervisor of operation and maintenance, who was retiring. On March 23, 1982, Paul Franklin, who was acting superintendent for the school district, sent a letter to Dr. Everett outlining some of his new duties. The letter specifically asked for a schedule from Dr. Everett on his plans to effect some moves of facilities which were to take place over that summer. In response to this memo, Dr. Everett sent a letter to Dr. Franklin. The letter explained Dr. Everett's basic philosophy on education, and stated that "I do not intend to be isolated from the total instructional activities." Franklin immediately responded to Everett's letter, indicating that he was disturbed by the possibility that Everett had not comprehended the description of his new position. The letter reiterated that the job description for the office of supervisor of operation and maintenance was the extent of Everett's duties. Franklin indicated that Everett's new contact would be based upon the duties outlined in the job description, and that if Everett was not comfortable with those duties, he should not renew his contract.
Problems began to develop almost immediately after Everett's transfer. They revolved around Everett's failure to separate himself from the responsibilities of his old job and his reluctance or inability to perform the functions of his new position. Dr. Cannon, who replaced Paul Franklin as the new superintendent of schools, received numerous complaints from Dr. Everett's associates and subordinates. Specifically, Dr. James Hefter, the new Director of Pupil Personnel Services, reported to Dr. Cannon that Everett had never explained to him all of the duties of his new position. Additionally, Dr. Hefter was concerned that some of the records of his office were located in Dr. Everett's new office, or in some locked file cabinets to which Dr. Everett had never provided a key. This problem became particularly acute when information requested by the state Department of Education was unavailable to Dr. Hefter. There was also evidence that Dr. Everett continued to perform some of the functions of Pupil Personnel Services. That evidence consisted of correspondence found in Dr. Everett's office which pertained to the transfer of students.
Complaints also came to Dr. Cannon regarding Dr. Everett's failure to adequately perform in his new role as supervisor of operation and maintenance. While Everett met twice with Phillips Garrison, the man whom he was replacing, neither of those meetings pertained to his new duties. Indeed, one of Everett's primary duties  the upkeep of grounds around the various schools in the Meridian district  was so poorly managed that several of the schools did not have their grass cut at all until after Everett was terminated. When Everett was instructed to turn in a proposed schedule for pay increases for his employees, he turned in an elaborate plan which evidenced a complete failure to follow instructions. After having the plan returned to him with instructions to redo it, he submitted basically the same plan once again. He was told a second time to redo the plan, whereupon he announced to Dr. Cannon that he was "washing my hands of the whole mess." Everett also had difficulty in working with personnel in his own and in other departments. The supervisor of purchasing encountered difficulty in working with Everett on a specification for a new boiler. An electrician in Everett's department was told by Everett to ignore building code standards in wiring some shops in the school system. Finally, Roscoe Jones, the supervisor of transportation, and Dr. Everett had an argument over the move of some buses into a new site, and Dr. Cannon was forced to mediate between the two men.
The record reflects a continuous stream of correspondence between Dr. Cannon and Dr. Everett over the summer of 1982, which indicated Dr. Cannon's concern over Dr. Everett's performance of his job. When it became obvious that no improvement in this performance was forthcoming, *280 Cannon suspended Everett, effective August 16, 1982, with termination to be effective on September 16.
The specific charges that had been made against Dr. Everett by Dr. Cannon were as follows: (1) Failure to assist Dr. Hefter in the transition of Pupil Personnel Services. (2) Failure to make records available to Dr. Hefter. (3) Keeping file cabinets containing Pupil Personnel Services records locked and the keys in his possession. (4) Failure to provide forms needed for gathering information for the State Department of Education. (5) Failure to surrender the duties of Pupil Personnel Services to Dr. Hefter. (6) Failure to work with Mr. Garrison to learn about the duties of the job of supervisor of plant operation and maintenance. (7) Failure to keep the grass cut. (8) Failure to develop a schedule for mowing. (9) Failure to move his office from the central office location to the headquarters of plant operation and maintenance. (10) Failure to develop a salary schedule. (11) Advising bidders to disregard advertised bid specifications. (12) Instructing the electrician to perform work at less than code standards. (13) Failure to cooperate with his peers, specifically, Mr. Roscoe Jones. (14) Other similar examples of incompetence.
The school board made the following findings: 1. Failure to cooperate in the transition of Pupil Personnel Services to Dr. Hefter. The board found that Everett had tried to get his new job description changed to include those duties, but that Cannon always refused. Further, Hefter was expecting the duties to be turned over, and he inquired of Everett on several occasions about the records and the duties. Everett "seemed to be dragging his feet." The board found that Everett refused to cooperate with developing information required by the state department of education, which caused the state department to have to send a second notice to the school. The information requested was unavailable until the school principals returned to duty in August. The board found that Everett had failed to make records available to Hefter, in that Dr. Cannon's secretary unlocked a file cabinet in Dr. Everett's office on August 20th, and found the forms necessary for gathering the information for the state. There was also information on pupil transfers in Dr. Everett's office which had not been turned over to Dr. Hefter. The board found that Dr. Everett had kept a file cabinet which remained in his old office locked and did not produce a key for Dr. Hefter until a locksmith had been called. The file cabinet was found to contain personal and personnel records. The charge that there were "other similar examples of your failure to surrender the duties of director of Pupil Personnel Services" was not substantiated.
2. Incompetence and performance of duties as supervisor of plant operation and maintenance. The board found that Everett had failed to learn about the duties of his new job, in that he only saw Garrison twice, and in neither of those occasions were the new duties of his job discussed. He had failed to keep the grass cut on the school yards, resulting in its being in higher and worse condition than it had been in years. By August 16th, some schools had only been cut once, and some schools had not been cut at all. After Everett's termination, Mr. Lowery got all the grass cut between August 16th and early September. The board found that Everett had failed to develop a mowing schedule after an oral request, and a subsequent written request at the end of July. While Everett said that he did not know how long it would take to cut the grass, he never asked Mr. Garrison or Mr. Lowery. On the charge that Everett had failed to move his office, the board found that Cannon allowed him to stay at the old office, which the board found to be poor judgment on both parts. The board found that Everett had failed to develop a salary schedule, after he was instructed to give his employees a flat 4 1/2 to 5% raise. Instead, he tried to correct salary inequities among his employees by implementing a variable rate scheme. When he was told that he would have to rework the schedule, he wrote a memo saying he was washing his hands of the matter. His employees were paid twice without their raises, and other employees of the school system ended *281 up preparing the schedule, accomplishing the task in less than four hours. The board did not find that Dr. Everett had advised bidders on the heating system to disregard specifications; it was not proven because no bidders were produced as witnesses. The board did find that Dr. Everett had instructed an electrician to perform work at less than code standards. Further, the board found that Dr. Everett admitted he may have misled the electrician. The board found that there was a failure on the part of Dr. Everett to cooperate with his peer group, specifically, not agreeing with Roscoe Jones on where to park buses. The board found that the "other examples of incompetence" were not proven.
In conclusion, the board found that Dr. Cannon made a proper decision in suspending and terminating Dr. Everett, that Everett was recalcitrant and uncooperative, that he was incompetent, that his actions were not in the best interest of the school district.
Dr. Everett appealed this decision to the chancery court. The court recognized that the burden was on the school board when it sought to terminate a contract, and that the school board could not terminate Everett's contract for events occurring before the contract or outside the contract. Accordingly, the court limited its review to actions or inactions which occurred after June 1, 1982, and which related to his duties as supervisor of plant maintenance and operations.
The court made the following findings: that Everett did not cooperate with Garrison on learning the duties of his new position; that he did not keep up the grounds of the school; that he did not complete the requested pay schedule and indicated an unwillingness to complete it; that he was unable to get along with his fellow employees; and that there was substantial evidence existing in the record to justify termination.

I. APPLICABILITY OF § 37-9-59
Prior to its amendment in 1978, Miss. Code Ann. § 37-9-59 (1972) read as follows:
For incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause the county superintendent of education or superintendent of the municipal separate school district, as the case may be, may remove or suspend any superintendent, principal or teacher in any school district. Before being so removed or suspended the superintendent, principal or teacher shall be notified of the charges against him and he shall be advised that he is entitled to a public hearing upon said charges at a date to be fixed in such notice.
The 1978 amendment removed "superintendent" from the list of school district employees who may be removed by the superintendent of the municipal separate school district. By virtue of this amendment, Dr. Everett argues that Dr. Cannon removed him without authority of law.
The case of Tutwiler v. Jones, 394 So.2d 1346 (Miss. 1981) interpreted § 37-9-59 of the Mississippi Code, as it has been amended. In Tutwiler, the school board was attempting to remove a district school superintendent for misconduct. This Court held:
In this situation, if anything is clear, it is that the power, formerly expressly vested in the county superintendent of education, to remove district school employees for misconduct and to conduct hearings for that purpose has been completely withdrawn from that official by the amended statute.... It is equally clear that the removal hearing is to be before the board of trustees, and the actual power to remove or not to remove rests with that body.
Id. at 1348.
The letter that Dr. Cannon sent to Dr. Everett on August 16, 1982, stated that he was immediately suspended without pay, and that he would be terminated on September 16, 1982. The letter further informed Dr. Everett of his right to a hearing, which Dr. Everett subsequently requested. *282 The hearing was originally scheduled to be held on September 16, and was continued until the following January at Dr. Everett's request. Thus, if Everett had not continued the hearing date, the school board would have been in the position, on September 16, of holding a termination hearing for Dr. Everett prior to his effective termination date. Since the board ultimately made substantially the same factual determinations as the superintendent, we may assume that the result of a September 16 hearing would have been that the board would have terminated Everett on September 16. The fact that Everett was told that he was terminated before the board was convened for a hearing is, at most, harmless procedural error and not grounds for reversal. Noxubee County Board of Education v. Overton, 483 So.2d 301, 303 (Miss. 1985); Cox v. Thomas, 403 So.2d 135 (Miss. 1981).

II. ADMISSION OF EVIDENCE PRIOR TO THE CONTRACT
Everett's second assignment of error was that the evidence of alleged misconduct on his part prior to the beginning of the current contract was inadmissible and could not be considered as reasons for termination of employment. Everett's new contract began on July 1, 1982. He asserts that any evidence gained from the testimony of Dr. Franklin, the former superintendent of schools, or Mr. Garrison could not be considered because they both left the school system before July 1st. He also asserts that several school exhibits were inadmissible, because they were letters or memos written before the inception of his new contract. Without that evidence, he alleges that the charges of failing to assist Hefter, failing to make records available, failing to work with Garrison, failing to move his office, failing to develop a salary schedule, and failing to cooperate with his peers were not supported by sufficient evidence.
Everett did not object during the hearing to the introduction of this evidence. However, on appeal, the chancery court recognized that there was a problem with the introduction of evidence outside the time period of the contract. Nevertheless, the chancellor's position was that there was still substantial evidence within the time period of the contract to justify Dr. Everett's dismissal. The failure to keep the grass mowed and to develop a schedule for mowing clearly occurred after the effective date of the new contract. So did the failure to implement a pay schedule for Everett's employees. The file cabinet containing forms required for the gathering of data for the state department of education was not unlocked until August, and the letter from the parent of a student requesting a transfer was found on Dr. Everett's desk in August. We agree with the chancellor that these items constituted substantial evidence to uphold the decision of Dr. Cannon and the board of trustees to terminate Dr. Everett.

III. ADMISSION OF HEARSAY TESTIMONY
Dr. Everett's third assignment of error is that the board erred in considering evidence of various charges that were proved solely by hearsay testimony or that were allegedly proved after the superintendent suspended or terminated him. Miss. Code Ann. § 37-9-111 (Supp. 1985) provides that when conducting a hearing, the school board is not bound by common law or statutory rules of evidence. However, "Hearsay evidence, if admitted, shall not be the sole basis for the determination of facts by the board or hearing officer." Id.
A substantial amount of hearsay testimony was given in this case, and several letters and memoranda were admitted into evidence. Dr. Everett particularly attacks the evidence regarding his alleged conversation with bidders on the boiler project, in which he was supposed to have told them to ignore the specifications, and the evidence of the alleged building code violation. This hearsay evidence would be inadmissible if it was shown that the board's findings of facts on these issues relied solely on the hearsay evidence. Noxubee *283 County Board of Education v. Givens, 481 So.2d 816 (Miss. 1985). In the case of the building code violation, while the evidence of what the building code actually contained may have been hearsay, Dr. Everett admitted in his own testimony that he may have misled the electrician into performing work that was at less than code standards. Thus, the board could have based its decision on Dr. Everett's testimony. It is true that the only evidence regarding the bid specifications was hearsay testimony; however, the board made a finding that this allegation was not proved because of lack of evidence. Thus, Dr. Everett does not appear to have been prejudiced by the admission of any hearsay testimony.
Everett also alleges that the school board's exhibit 18 was admitted in error, as it was a memo written from Dr. Hefter to Dr. Cannon after the termination of Dr. Everett. The memo concerned the locked file cabinets in which certain records were found that belonged to Pupil Personnel Services. The memo was written on August 18, 1982  two days after Dr. Everett was suspended. He now argues that the letter was inadmissible because it could not have formed the basis for his termination. However, the record shows that the locked file cabinets had been a continuing source of concern to Dr. Hefter since he assumed the duties of the office of Director of Pupil Personnel Services. It is true that the cabinet was not found to contain the records in question until after Dr. Everett had been terminated. However, his reluctance to unlock the cabinet  which was still located in the office of Pupil Personnel Services  had been known to Dr. Cannon for some time. Thus, the finding that Dr. Everett had failed to cooperate with Dr. Hefter was based on factors other than the fact that the locked file cabinet was ultimately found to contain records which belonged to Pupil Personnel Services.

IV. WEIGHT OF THE EVIDENCE
Finally, Dr. Everett argues that the findings of the board were against the overwhelming weight of the evidence. Where there is a conflict of testimony presented to the board, the board is entitled to determine which testimony it will give the most weight. Brantley v. Surles, 404 So.2d 1013 (Miss. 1981). As long as the board's findings are supported by substantial evidence, this Court will not reverse the board. Hattiesburg Municipal Separate School District v. Gates, 461 So.2d 730 (Miss. 1984); Holliday v. West Point Municipal Separate School District, 401 So.2d 1296 (Miss. 1981).
In this case, several witnesses testified to the general uncooperativeness and incompetence of Dr. Everett. This testimony was corroborated by the exchange of memoranda in the record, which showed a general unwillingness on the part of Dr. Everett to address the specific areas of responsibility which had been assigned to him. It is our opinion that the board's finding of fact was supported by substantial evidence.
Finding no reversible error in this case, we affirm the decision of the Board of Trustees of the Meridian Municipal Separate School District to terminate Dr. Douglas Everett.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.