515 So.2d 893 (1987)
Michael J. SPRADLIN
v.
BOARD OF TRUSTEES OF PASCAGOULA MUNICIPAL SEPARATE SCHOOL DISTRICT.
No. 57191.
Supreme Court of Mississippi.
November 4, 1987.
*894 Gary L. Roberts, Pascagoula, for appellant.
Raymond L. Brown, Brown & Associates, Pascagoula, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and GRIFFIN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
The Board of Trustees of the Pascagoula Municipal Separate School District offered Mr. Michael Spradlin the opportunity for a hearing on the question of whether or not his employment with the school district should be terminated in connection with an allegedly improper handling of a purchase of encyclopedias for the school district. Mr. Spradlin requested such a hearing, which was held on July 18, 1985, following a formal explanation of the charges by the school board. A hearing officer was appointed by the school board to preside over the proceedings. After reviewing the record of the hearing, the school board issued an opinion and decision on August 16, 1985, in which it terminated Mr. Spradlin's employment with the school district effective at the end of the work day on August 16, 1985. Mr. Spradlin appealed this decision to the Chancery Court of Jackson County. The chancellor affirmed the school board's decision, based on review of the record and oral arguments, on January 21, 1986. It is from this decision that Mr. Spradlin appeals to this Court, assigning the following errors:
I. THE COURT COMMITTED ERROR IN AFFIRMING THE DECISION OF THE SCHOOL BOARD WHICH EXCEEDED THE STATUTORY AUTHORITY AND POWER OF THE BOARD.
II. THE COURT COMMITTED ERROR IN AFFIRMING THE DECISION OF THE SCHOOL BOARD WHICH VIOLATED THE STATUTORY AND CONSTITUTIONAL RIGHTS OF THE APPELLANT, MICHAEL J. SPRADLIN.
III. THE COURT COMMITTED ERROR IN AFFIRMING THE DECISION OF THE SCHOOL BOARD, WHICH WAS BOTH ARBITRARY AND CAPRICIOUS.
IV. THE COURT COMMITTED ERROR IN AFFIRMING THE DECISION OF THE SCHOOL BOARD WHICH WAS NOT SUPPORTED BY ANY SUBSTANTIAL EVIDENCE.

FACTS
Mr. Spradlin has served in the field of education for approximately 19 years, all of them with the Pascagoula School District. Prior to his termination in August of 1985, Mr. Spradlin served as Director of Federal Programs and Coordinator of the Instructional Materials Center. Part of his responsibility as coordinator of the Instructional Materials Center was to determine the needs of the various schools within the district with respect to acquisition of encyclopedias for the school libraries. The purchases in question are encyclopedias necessary to upgrade the school district libraries for the purpose of maintaining school accreditation. The school board planned and budgeted money for this expenditure. Mr. Spradlin conducted a survey of the various schools within the district for the purpose of determining their particular needs with respect to the acquisition of encyclopedias. *895 In early December 1984, Mr. Spradlin became aware of a special offer available to the school system from the publisher of Encyclopedia Brittanica whereby a set of 1984 Compton's Encyclopedias together with a set of 1984 Brittanica Junior encyclopedias could be acquired for a total purchase price of $369.00. Because Mr. Spradlin thought the school system would want to take advantage of this special offer, he agreed with the publisher's representative to reserve 12 combined sets, with no obligation to buy, with the understanding that Mr. Spradlin would later notify the publisher of the school's exact needs when he obtained the survey results. When the survey results were in, Mr. Spradlin ascertained that the school district would need eight of the combined sets. Because the promotional offer was ending, Mr. Spradlin told the encyclopedia representative that the school anticipated needing eight of the sets, gave her a purchase order number from the stack of purchase orders specifically issued to him, and told the representative that the written purchase order would be forthcoming from the district. The encyclopedia representative directed her company to ship the order immediately.
Mr. Spradlin prepared the purchase order and hand-delivered it to the school superintendent, Dr. John McCormick, for approval, along with other purchase orders generated as a result of the survey. The superintendent signed this particular purchase order and returned it to Mr. Spradlin, requesting that Mr. Spradlin provide additional written justification for the encyclopedia purchase because the purchase was from a single source. Dr. McCormick testified that he told Mr. Spradlin that in addition to the further justification, this single-source purchase must go before the school board for approval. Mr. Spradlin, however, claims that Dr. McCormick did not verbally tell him that this single-source purchase would have to go before the school board. Therefore, Mr. Spradlin provided the written justification and returned the memorandum with the purchase order to Dr. McCormick. After that point, the purchase order somehow got to the finance department where a check was cut for the purchase of the encyclopedias. Mr. Spradlin testified that he did not take the purchase order to the finance department, but that he returned it to Dr. McCormick. Dr. McCormick does not know how the purchase order got to the finance department, either. By the end of February 1985, the encyclopedias had been shipped and distributed to the individual schools.
On February 18, 1985, Dr. McCormick issued a written memorandum to school personnel in which he outlined the procedure for single-source purchases over $500.00, required by Miss. Code Ann. § 31-7-13 (1972 & Cum.Supp. 1986). Significantly, a part of that procedure involves getting approval from the school board before single-source purchase orders for over $500 are issued to the vendor. Mr. Spradlin testified that the February 18th memorandum was the first time he became aware that single-source purchases over $500 had to specifically have board approval. He also testified that he assumed that these procedures applied after the date of February 18, and did not apply to purchases made previously. Before that time, Mr. Spradlin operated under the procedures set out in a 1981 memorandum which stated that single-source purchase orders needed to have the words "single source" typed on them before processing by the finance department. He complied with this set of instructions when he filled out the purchase orders for these encyclopedias. Dr. McCormick testified that he, himself, became aware of the law on single-source purchases sometime in January of 1985.
In early March, while Dr. McCormick was reviewing the check register to be presented to the March board meeting, he noted that there was a check made payable to Brittanica. At that point he understood that there would be a problem with this check because it was a single-source purchase for more than $500 which had not been approved by the school board. Dr. McCormick was not aware at that point that the encyclopedias had, in fact, been delivered to the schools. Dr. McCormick held the check instead of releasing it and immediately consulted with Mr. Spradlin *896 and Dr. Whatley, associate superintendent, as to how to correct the problem. The three of them together determined to pull the check from the board agenda for the early March board meeting and to resubmit the encyclopedia issue at the March 27 board meeting as a memorandum requesting approval for the purchase of the single-source item.
At the March 27 board meeting, all three, Dr. McCormick, Dr. Whatley and Mr. Spradlin, presented the encyclopedias for approval as a single-source item. None of the three told the board that the items indeed had already been delivered. Mr. Spradlin responded to the board's questions concerning the proposed purchase of the encyclopedias, and during his answers Mr. Spradlin, while answering the specific questions truthfully, never informed the board that these encyclopedias were already delivered to the school district. The board, in fact, declined to approve this single-source purchase at that board meeting, tabling it until Mr. Spradlin could provide them with further information about 1985 encyclopedias as opposed to 1984 encyclopedias.
Around April 11, 1985, Dr. McCormick issued a private written reprimand to Mr. Spradlin for the "encyclopedia fiasco," in which he pointed out that Mr. Spradlin had not followed the procedure for single-source purchases and that if he ever failed to follow procedure again his employment with the school district would be terminated. Mr. Spradlin accepted the reprimand from Dr. McCormick out of loyalty to the superintendent and to the school district, even though he considered it harsh under the circumstances.
At the April 15 board meeting, Dr. McCormick finally told the board the truth about the circumstances of the purchase of these encyclopedias. He then resigned his position as Superintendent of Schools. It is not clear from the record whether Dr. McCormick resigned as superintendent because of the encyclopedia purchase business or for other reasons.
The two factual issues which the school board had to determine in deciding whether or not to terminate Mr. Spradlin's employment with the school district are:
1. Whether Mr. Spradlin knowingly acted contrary to law and contrary to school board policy when he processed the purchase orders for the single-source purchase of the encyclopedias, and
2. Whether Mr. Spradlin participated in the deliberate misrepresentation of the circumstances of the encyclopedia purchase to the school board, along with Dr. McCormick and Dr. Whatley.
In rendering its decision and opinion, the school board found that Mr. Spradlin had acted contrary to law, contrary to school board policy, and contrary to good business practice in his handling of the encyclopedia affair. Based on these findings, the school board felt that it could no longer place trust and confidence in Mr. Spradlin's judgment, especially in light of the fact that he participated in deliberate misrepresentation of the situation to the school board. Therefore, the school board terminated his employment with the school district.

DISCUSSION

I. The court committed error in affirming the decision of the school board which exceeded the statutory authority and power of the board.
Under this assignment of error, Mr. Spradlin argues that Miss. Code Ann. § 37-9-59 (1972 & Cum.Supp. 1986) provides for the removal of a teacher only by the superintendent and that the role of the board of education is to conduct a hearing on the matter should the teacher request such a hearing. The factual situation in this case is somewhat unusual. The superintendent, Dr. McCormick, resigned on the same evening that he revealed the truth about the encyclopedia purchase to the school board. Before his resignation, Dr. McCormick wrote a private reprimand to Mr. Spradlin for his handling of the purchase. Dr. McCormick did not recommend Mr. Spradlin's dismissal. After Dr. McCormick's resignation, the school board began its own investigation of the encyclopedia *897 purchase which culminated in the hearing and subsequent dismissal of Mr. Spradlin. The school board undertook these procedures because it did not wish to wait to investigate until it hired a permanent superintendent.
Miss. Code Ann. § 37-9-59 (1972 & Cum. Supp. 1986) says that the superintendent "may remove or suspend" a teacher. Before being removed, the teacher must be notified of the charges and advised of the right to a public hearing which the school board will conduct itself or through a hearing officer. The question, then, is whether or not the board of education acted outside its statutory authority by investigating Mr. Spradlin's conduct in the encyclopedia purchase and determining to terminate his employment without the recommendation of the superintendent. This factual situation is unlike any we have heretofore reviewed; however, the case of Tutwiler v. Jones, 394 So.2d 1346 (Miss. 1981) speaks to the power of the school board to remove school employees:
[I]f anything is clear, it is that the power ... to remove district school employees for misconduct and to conduct hearings for that purpose has been completely withdrawn from that official [county superintendent] by the amended statute... . It is equally clear that the removal hearing is to be before the board of trustees, and the actual power to remove or not to remove rests with that body.

Id. at 1348. [emphasis added]
The opinion also construes the language "may remove" as being limited to cases in which the teacher does not request a hearing. Id. See also, Everett v. Board of Trustees, Meridian Municipal Schools, 492 So.2d 277, 281 (Miss. 1986).
Since the power to remove a teacher rests finally with the board, it is an unnecessarily technical argument to say that the school board cannot investigate and initiate a removal in the absence of a superintendent. We do not read the statute to place this kind of limitation on a school board's power.
Furthermore, in this situation, it seems that the school board did the only plausible thing. The superintendent, Dr. McCormick, had just revealed that he and Mr. Spradlin had participated in a knowing misrepresentation to the school board concerning the encyclopedia purchase. After the superintendent's resignation, the school board should have acted immediately to investigate the surrounding circumstances of the purchase. The school board also notified Mr. Spradlin of the charges and notified him of his right to a public hearing. They complied with the statutory provisions for the procedures of the hearing set out in Miss. Code Ann. § 37-9-111 (1972 & Cum.Supp. 1986). In order to further protect Mr. Spradlin's rights, the board conducted its hearing through a hearing officer. Mr. Spradlin, thus, was not harmed in any significant way by the rather unusual circumstances surrounding the investigation and decision to terminate his employment. Dampier v. Lawrence County School District, 344 So.2d 130 (Miss. 1977) implies that a school board can determine to dismiss an employee at the outset and then conduct the hearing, and still not run afoul of the separation of powers doctrine. Id. at 132, quoting Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975).
We find that the school board did not exceed its statutory authority in its conduct throughout these proceedings.

II. The court committed error in affirming the decision of the school board which violated the statutory and constitutional rights of the appellant, Michael J. Spradlin.
Mr. Spradlin contends that the school board proceedings violated his right to due process. He first argues, correctly, that he has a property interest in his employment with the school district. He was still under contract pursuant to state law when he was dismissed, and had an understanding with the school board that his contract would be renewed for the upcoming school year. Thus, he has established an expectancy in his continued employment which should be safeguarded by procedural *898 due process. See, e.g., Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Stewart v. Bailey, 556 F.2d 281 (5th Cir.1977); Roane v. Callisburg Independent School District, 511 F.2d 633 (5th Cir.1975); Cantrell v. Vickers, 495 F. Supp. 195 (Northern District Miss. 1980). What process is due has been explicitly set out in Miss. Code Ann. § 37-9-111 (1972 & Cum.Supp. 1986). Mr. Spradlin makes no claim that the statute is unconstitutional or that the statutory procedure was not complied with. Rather, his argument is that he was denied due process because he was denied a fair and impartial hearing. This is so, he argues, because the school board had already determined to dismiss him when it informed him of his right to a public hearing, and because even though the board conducted the hearing through a hearing officer, the ultimate decision rests with the board based on the record, pursuant to Miss. Code Ann. § 37-9-111 (1972 & Cum.Supp. 1986). However, Mr. Spradlin requested a board hearing and agreed to the hearing-officer format. He made no complaint at the time of the hearing about the possibility of impartiality of the school board. This situation falls squarely under the case of Dampier v. Lawrence County School District, 344 So.2d 130 (Miss. 1977). In Dampier, a teacher made the same argument, and this Court first held that failure to make such objection at the hearing waives the point. Dampier at 131. Second, this Court analyzed the constitutional issue involved where a board acts both investigatively and adjudicatively. Citing Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), this Court first established a presumption of honesty and integrity in those serving as adjudicators. Dampier at 132. Next, the Court said that in order to rebut the presumption, the teacher must show that the board members had a personal or financial stake in the decision, or that there was some personal animosity toward the teacher. Id., quoting Hortonville Joint School District No. 1 v. Hortonville Educational Association, 426 U.S. 482, 96 S.Ct. 2608, 49 L.Ed.2d 1 (1976). Finally, this Court found that a showing that a board was involved in the events preceding the termination is not enough, absent a showing of either personal animosity, personal stake or financial stake in the decision, to overcome the presumption of honesty and integrity of board members in conducting the hearing and rendering the decision. Id. Accord Megill v. Board of Regents of the State of Florida, 541 F.2d 1073, 1079 (5th Cir.1976); Duke v. North Texas State University, 469 F.2d 829, 834 (5th Cir.1972).
Mr. Spradlin makes no allegations that the board members had a personal or financial stake in their decision, nor does he show that there was any personal animosity towards him by board members. Therefore, we do not find that Mr. Spradlin's constitutional right to due process has been violated.

III. The Court committed error in affirming the decision of the school board, which was both arbitrary and capricious.

IV. The Court committed error in affirming the decision of the school board which was not supported by any substantial evidence.
Under these two assignments of error, Mr. Spradlin argues that the school board's decision was not supported by substantial evidence and was, therefore, arbitrary and capricious. The scope of review for the chancery court on appeal from a school board decision, set out in Miss. Code Ann. § 37-9-113(3) (1972 & Cum.Supp. 1986), is a review of the record to determine if a decision of the school board is unlawful because it is not supported by any substantial evidence and/or is arbitrary and capricious. The chancery court here affirmed the school board's decision, finding that the decision was supported by substantial evidence and was not arbitrary or capricious. This Court adheres to the same scope of review when the school board decision is appealed from chancery court pursuant to Miss. Code Ann. § 37-9-113(5). Claiborne County Board of Education v. Martin, 500 So.2d 981, 985 (Miss. 1986); Merchant v. Pearl Municipal *899 Separate School District, 492 So.2d 959, 962 (Miss. 1986); Everett v. Board of Trustees, Meridian Municipal Schools, 492 So.2d 277, 283 (Miss. 1986); Noxubee County Board of Education v. Givens, 481 So.2d 816, 819 (Miss. 1985); Hattiesburg Municipal Separate School District v. Gates, 461 So.2d 730, 736 (Miss. 1984).
In its written opinion, the school board states that it made its decision for two reasons: (1) that Mr. Spradlin knowingly did not comply with the single-source purchasing law, Miss. Code Ann. § 31-7-12, nor school board policy regarding single-source purchasing in the handling of the encyclopedia business; (2) that Mr. Spradlin participated in misrepresenting the whole business to the board in order to cover up non-compliance. There is no dispute that Mr. Spradlin, Dr. McCormick and Dr. Whatley agreed to present the encyclopedia purchase order to the board for approval to purchase without revealing that the encyclopedias had already been purchased and delivered. On this point alone, there is substantial evidence to support the board's decision. As the school board pointed out, it must be able to rely on the honesty of its Federal Programs Director, Coordinator of Instructional Materials Center and Director of Security.
As to the issue of whether Mr. Spradlin knowingly failed to comply with single-source purchasing law and with school board policy on single-source purchases, the record reflects much testimony that no one, including Dr. McCormick, was actually aware of what the law required before January of 1985. Dr. McCormick did not inform his staff about the requirements of the law until the February 18 memo.
Dr. McCormick, Dr. Whatley, Mr. Spradlin and Dr. Seay, present superintendent, all testified that prior to the February 18 memorandum, the usual procedure for processing single-source purchase orders was simply to type "single-source" on the purchase order and send it through to finance. Dr. Whatley and Mr. Spradlin both testified that they did not know from any source, verbally or written, that single-source purchases over $500 had to be approved by the board before the purchase orders could be issued.
Testimony by all witnesses indicates that Mr. Spradlin apparently followed the procedures in place during November, December and January when he conducted the school surveys and processed the purchase orders for the encyclopedias.
In his enthusiasm to take advantage of the encyclopedia company's special offer, Mr. Spradlin reserved encyclopedias with the sales representative. In her haste to make a sale, the sales representative had the encyclopedias shipped before the purchase order made it through processing. Dr. McCormick actually signed the purchase order before realizing that single-source purchasing law required prior board approval for purchase. In short, the whole affair was inadvertently botched from several angles. In fact, the record shows that Dr. McCormick testified that many other purchases had to be returned because of the administration's inadvertent mistakes with regard to single-source purchasing law. We find that there was not substantial evidence on the record that Mr. Spradlin knowingly disobeyed the law. His problem, along with Dr. McCormick's and others in the administration, was not knowing what the law required. Furthermore, there is substantial evidence that he complied with the procedures as he knew them for purchasing from a single source.
On review of the record, we find that there is substantial evidence that Mr. Spradlin participated in a misrepresentation to the board. There was not substantial evidence on the record that he deliberately failed to comply with school board policy and single-source purchasing law. However, this Court has stated that where the record supports one valid and viable reason to dismiss a teacher, that fact cannot be sidestepped, and the board's decision will not be disturbed. Hattiesburg Municipal Separate School District v. Gates, 461 So.2d 730, 739 (Miss. 1984). Misrepresentation to a school board about a major single-source purchase is serious and should be good cause for dismissal.

*900 CONCLUSION
From a review of the record as a whole, we find the school board's decision to be supported by substantial evidence and is, therefore, not arbitrary and capricious. The chancery court did not err in affirming the school board's decision. Finding no error, we affirm the chancery court's decision.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.