## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CC-00599-SCT

*ARTHUR TOWNSEND*

*v.*

*NOXUBEE COUNTY SCHOOL BOARD*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/93 |
| TRIAL JUDGE: | HON. ROBERT L. LANCASTER |
| COURT FROM WHICH APPEALED: | NOXUBEE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PATRICIA A. HANCOCK |
| ATTORNEY FOR APPELLEE: | CLENCIE L. COTTON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 2/6/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DAN LEE, C.J., PITTMAN AND MILLS, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

Arthur Townsend appeals to this Court the decision of the Noxubee County School Board (the Board) not to renew his contract as principal. The Chancellor affirmed the decision of the Board. Townsend claims that the decision was not supported by substantial evidence and was arbitrary and capricious. He also asserts that he was denied due process because the Board's attorney served as the hearing officer in violation of the statute and that the Board failed to provide him with a summary of the factual basis of the charges supporting non-reemployment as required by statute. Finding no error in the Chancellor's ruling, we affirm.

The Board employed Townsend as a principal during the 1989-90 school year. He had previously served in this capacity for six years. Superintendent James Williams recommended that the Board renew Townsend's contract. On February 20, 1990, the Board voted 3-to-2 to renew Townsend's contract for the 1990-91 school year. However, one member, Earl Stewart, changed his vote in a subsequent, special meeting of the Board, reversing the vote 3-to-2 against renewal.

Townsend requested and was granted a hearing on the non-renewal of his contract. Emanuel Smith, the Board's attorney, conducted the hearing. Townsend sought from the Board the reasons for non-renewal and the underlying factual basis for those reasons. He was furnished the affidavits of Board members Stewart and Virgil Jones. No further explanation of details were furnished except for a list of possible witnesses.

George Balder, a staff member of Mississippi Association of Educators, represented Townsend at the hearing. He objected to there being no factual basis provided him prior to the hearing; however, the objections were overruled, and the hearing proceeded.

At the Board's hearing, Ophalene Jones, a fourth-grade teacher of eighteen years, testified that the atmosphere at the school was like a military school. She claimed that there was no communication, that teachers couldn't talk to students, that if teachers talked to each other that they would be called in for a conference, that the students seemed threatened, that there was a lack of involvement in the Parent-Teacher Association (PTA), and lack of discipline. Eunice S. Jamison, also a teacher, testified that the faculty had been instructed by Townsend not to speak of anything that happened at school to the general public. She stated that "anything that occurred within the confines of that school was to be left specifically at that school." She maintained she could not talk about a situation if somebody got hurt at school. She also understood Townsend's instructions meant "not to talk to the superintendent and the Board." She understood that if she violated this instruction, "I would probably be reprimaned [sic] in some fashion."

Joann Ruffin, former president of the PTA, testified that there were problems getting PTA meetings scheduled. She claimed that she reported an incident involving her son to Townsend, but that he failed to act upon it, and in fact, "he tried to, like, cover it over, you know . . ." requiring that she go to the Superintendent. Ms. Ruffin claimed to have confronted Townsend with allegations about a teacher that had "come to school on several occasions and had been drinking." She claimed Townsend always stated that "well, he never saw him drink, or he never saw him stumble over anything, but you've got a classroom full of students that see this. What else do you need?" She claimed that Townsend didn't want parent participation, and that ultimately someone else was appointed to take her place. When she asked who told her she had been replaced, she was told, "Reverend Townsend," but that there had not been a duly-called meeting of the PTA and to her knowledge, no election. She claimed to have brought parents' complaints and a complaint "concerning Reverend Townsend saying something to some of the young female students" to the attention of the Board, but nothing was done about it.

Betty Cotten, a teacher at the school, testified Townsend questioned her as to where she was going to stand at the hearing. She stated that he questioned whether "you're going to be with me or with that other group. So I'll know how to feel about you and think about you before tomorrow." She felt it was "highly nonethical, because I really felt like he was threatening me." She claimed the atmosphere with teachers and students was "a suppressed feeling." She stated that "we were told in faculty meetings that -- well, he said, I lie when it's expedient, and if it's necessary for you to tell a lie, I would expect you to." She too claimed Townsend had instructed her not to discuss what occurred at school outside of school. She testified that he would "reprimand you in front of the children, and that it's very humiliating and very unprofessional ethics." She testified Townsend wanted all students in their seats at all times, but that was not her style of teaching.

Bessie Norman, a retired teacher, testified that she had been transferred from one grade level to another by Townsend. She testified Townsend questioned her about a conversation she had with other teachers and told her that she would be written up if it happened again. She also stated that Townsend told her she could be fired for going out into the community and talking about school information.

Mattie Jackson testified that Townsend had instructed teachers not to talk about conditions at school and not to discuss their problems with their superiors. She too stated Townsend asked her about her testifying against him at the hearing. She admitted Townsend enforced school district discipline policies.

Gaven Tate, a former teaching assistant, testified that she took leave of absence due to the pressure of discipline problems taken to Townsend, but that nothing was done to improve the situation. She admitted her being pregnant also influenced her decision to take leave of absence.

The school janitor, James Sykes, testified that Townsend did not treat people right, that he hollered at them. Regarding Townsend's treatment of the faculty, Sykes claimed that "he has got a mean conduct. " He claimed that Townsend "deals with the students in the same way." He admitted being reprimanded by Townsend for not doing his job.

Superintendent James Williams testified Townsend had been recommended for re-employment. He claimed to have played no part in the reasons for non-renewal furnished to Townsend. He claimed that Townsend had satisfactory evaluations and deserved re-employment. He stated that even with certain shortcomings found at the school, he would have recommended Townsend for renewal. He admitted on cross-examination that his recommendation was with certain reservations. He also admitted that his previous recommendations did not contain any reference to reservations.

The chancellor's scope of review of the Board's decision is mandated by statute. This review is limited and ,if there is substantial credible evidence undergirding the school board's findings of fact, those findings may not be disturbed on appeal either by the chancery court or this Court. Miss. Code Ann. § 37-9-113(3) (1972); *Noxubee County Board of Education v. Givens*, 481 So. 2d 816, 819 (Miss. 1985).

Townsend cites the case of *Givens* as authority where the evidence is not substantial. In *Givens*, this Court did find the evidence not to be substantial; therefore, the decision of the Board was arbitrary and capricious. *Id*. at 818. However, that case dealt only with the confusing reassignment of Givens from one school to another and Givens's alleged insubordination because she intentionally disobeyed the order of the Superintendent. This Court, while acknowledging that "insubordination" is a ground for dismissal of a public school teacher in this state, nevertheless found: "In view of Givens' state of confusion, substantially induced by the administrative ineffectiveness of the school district, any refusal on her part to obey an order can hardly be labeled insubordination." *Givens*, 481 So. 2d at 819. The allegations against Givens hinged upon the testimony of the Superintendent and supposed supporting testimony of other "individuals on the scene." Regarding the Superintendent's testimony, this Court found:

> That testimony, however, on all relevant points, was pure hearsay. . . .We find in the testimony
> of these eyewitnesses no corroboration of the hearsay testimony of Superintendent Dickson on

the points that might arguably be said to justify termination. For this reason, we do not regard the testimony of Superintendent Dickson as substantial evidence within the meaning of Section 37-9-113(3)(a).

*Givens*, 481 So. 2d at 820.

The Court then held that "the School Board's ruling was arbitrary or capricious." *Id. Givens* is clearly distinguishable from the case at bar, where there was more than sufficient eyewitness testimony from teachers and employees "on the scene," and such testimony for the most part was not hearsay, but rather, their own personal observations.

Townsend claims that personal animosity and interest of at least some members of the Board tainted the decision and denied Townsend an impartial hearing. ***Hoffman v. Board of Trustees, East Mississippi Junior College***, 567 So. 2d 838 (Miss. 1990). In all cases, the school board may not be an impartial body. ***Spradling v. Board of Trustees***, 515 So. 2d 893, (Miss. 1987). However, in spite of the admission of board member Stewart that his own children had experienced problems with Townsend, we are asked to ignore all the other evidence admitted against Townsend in this record. "Good reason" as used in § 37-9-17 is not defined. The closest comparable usage is "good cause" set out in § 37-9-59 which deals with termination during a contract, yet delineates the grounds for such action as "[f]or incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause . . . ." (Emphasis added.) As noted, the grounds listed do not end the potential list of other good causes.

After consideration of the witnesses' testimony, this Court cannot say that the Board's finding was not supported by substantial evidence, neither was it arbitrary or capricious. The Chancellor's denial of Townsend's requested relief on these grounds is affirmed.

The Chancellor also found the Board failed to comply with Miss. Code Ann. § 37-9-109 (1972), as amended, which guarantees the employee ". . . written notice of the reasons for nonreemployment [sic], together with a summary of the factual basis therefore. . . ." The Chancellor found, however, that the error was harmless.

Subsection 4 of § 37-9-113 states, "[n]o relief shall be granted based upon a court's finding of harmless error by the board in complying with the procedural requirements of sections 37-9-101 to 37-9-113." The Chancellor's decision stated such as a basis for his opinion. That decision is supported by our holding in *Cox v. Thomas*, 403 So. 2d 135 (Miss. 1981), where we held that as long as there is a substantial and manifestly good faith attempt by a school board to comply with the School Employment Procedures Act, and where the teacher is represented by counsel, procedural defects will not render the board's actions unlawful.

In the case at bar, there is no dispute that Townsend was furnished the two affidavits of board members which did contain some of the allegations against him, and he also received the witness lists from the Board. Townsend was also represented by counsel, as in *Cox.* Townsend apparently talked with some of the witnesses prior to the hearing. The conditions of *Cox* have been satisfied. The attempts at compliance by the Board appear to have been made in "good faith." Therefore, this Court cannot say that the Chancellor's decision -- that the error was indeed harmless -- was wrong.

Townsend also contends that the Board violated his statutory and constitutional due process rights by appointing the Board's attorney as the hearing officer. Townsend cites **Hoffman v. Board of Trustees**, s*upra*, as authority for the proposition that the Board attorney serving as the hearing officer taints the hearing. The Court determined in **Hoffman** that the test set forth by this Court for participation of a school board attorney in an advisor/participant role requires the employee to show that the attorney did corrupt or otherwise destroy the impartiality of the process. *Id.* at 841. In **Spradlin v. Board of Trustees,** 515 So. 2d 893 (Miss. 1987), this Court established the presumption of honesty and integrity in those serving as adjudicators, and in order to rebut the presumption, the teacher must show that the hearing officer had a personal or financial stake in the decision. Here, Smith, the hearing officer, was not involved in the actual decision of the Board not to renew Townsend's contract. However, he did participate in drawing up the written reasons for non-renewal and in the preparation of the affidavits signed by the two Board members and given to Townsend as written notice of the reasons for non-renewal. The statute itself states that "[t]he hearing may be held . . . before a hearing officer appointed . . . either from among its own membership, from the staff of the school district or some other qualified and impartial person." Miss. Code Ann. § 37-9-111 (1972) . Discretion is completely that of the school board as to the appointment of the hearing officer. The hearing officer's only limitation is that the officer be "qualified and impartial," and not be the "staff member responsible for the initial decision of nonreemployment [sic]." The Chancellor found no evidence of biased treatment nor questioned the impartiality of the hearing officer.

Mississippi school teachers and administrators do not have tenure. The Noxubee County School Board's decision was not arbitrary, capricious or violative of due process rights. The Chancellor's decision was based on statutory law and case law. There is no merit to these allegations. The holding of the Chancellor is affirmed.

**AFFIRMED**.


**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**