# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-00325-SCT

*SMITH PETROLEUM, INC. f/k/a MISSISSIPPI OIL, INC.*

*v.*

*LAMAR COUNTY SCHOOL DISTRICT*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/05/2018 |
| TRIAL JUDGE: | HON. JOHNNY LEE WILLIAMS |
| TRIAL COURT ATTORNEYS: | SHIRLEY M. MOORE |
| | CRAIG N. ORR |
| | RICHARD D. NORTON |
| | WILLIAM A. WHITEHEAD, JR |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | SHIRLEY M. MOORE |
| | CRAIG N. ORR |
| ATTORNEYS FOR APPELLEE: | WILLIAM A. WHITEHEAD, JR. |
| | RICHARD D. NORTON |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 05/30/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.    The Lamar County School District denied a request by Smith Petroleum to erect and construct an LED advertising billboard on its Sixteenth Section leasehold located on Old Highway 11 in Hattiesburg, Mississippi. Smith Petroleum filed its Notice of Appeal and Bill of Exceptions in the Chancery Court of Lamar County. The chancellor affirmed the School

District's denial of Smith Petroleum's request to erect and construct the LED billboard. Finding no error, we affirm the judgment of the chancery court.

## FACTS AND PROCEDURAL HISTORY

¶2.     The Lamar County Board of Education, N.B. Royals, and Kirk Frazier, as tenants in common, executed a Sixteenth Section Land Lease and Contract for a term of forty years for property located at 4041 Old Highway 11 in Hattiesburg, Mississippi. The lease contained the following provision:

### SUBLEASING OR ASSIGNMENT OF LEASE

Lessee covenants and agrees not to sublease, assign, transfer, or convey by warranty deed, quitclaim deed, or any other conveying instrument the herein described leased property and the leasehold interest therein without the expressed prior consent of the Lessor. In the event the Lessee requests and the Lessor approves any subleasing, transfer, or assignment of this lease or any portion thereof, then the Lessor may, in its discretion, require all parties to the transaction to obtain new leases as to each individual interest.

After obtaining approval from the School District, Frazier and Royals assigned the property to Mississippi Oil, Inc., by quitclaim deed. Subsequently, Mississippi Oil merged with Smith Petroleum.

¶3.     Smith Petroleum then entered into an exclusive agreement with Busby Outdoor, LLC, to erect and construct an advertising billboard depicted as an "LED Showcase Sign" on 2,945 square feet (0.07 acres) of the leased property. Under the agreement, Busby was to market advertising and to pay Smith Petroleum royalties for the forty-year term[1] of the agreement.

---

[1] The agreement stated the following:

2. **Term.** The term of this *Lease* shall commence upon the erection of the LED structures, and shall be for an initial period of forty (40) years "Term."

Busby was also granted exclusive rights to construct and erect future billboards on the property, "including necessary supporting structures, devices, illumination facilities and connections, service ladders and other appurtenances thereon." Busby was responsible for all power bills, internet, and insurance expenses, in addition to all maintenance of the physical structure, including the upkeep, painting, and illumination of the billboard.

¶4. Busby agreed to cover all initial costs of erecting and constructing the billboard, including all "permitting costs, materials, labor for construction, maintenance, shipping costs, attorney's fees, and any other associated construction costs." Although the parties agreed that Smith Petroleum would be the owner of the billboard, Smith Petroleum could only move the billboard and other improvements at the expiration of the forty-year lease.

¶5. Busby, on behalf of Smith Petroleum, sought a sign permit from the City of Hattiesburg. The members of the Hattiesburg Planning Commission voted to approve the permit.

¶6. During construction, the Lamar County School Board contacted Busby and asked that construction stop and that Busby attend the May 9, 2017, Board meeting, because the construction of the billboard needed to be addressed and approved by the Board. In addition to Busby, representatives of Lamar Outdoor and Headrick's Signs attended the meeting to discuss the installation of billboards along Old Highway 11. Before the May 9, 2017, meeting, Lamar Outdoor had sought the Board's approval for the placement of a sign across

---

This Agreement may be renewed by mutual agreement and further negotiation of the parties year to year after the expiration of the initial term.

(Emphasis added.)

the street from Smith Petroleum's property. The Board denied that request. At the meeting, Headrick's Signs requested that the discussion be tabled to allow additional consideration for the use of billboards on Old Highway 11.

¶7. The billboard issue was addressed again at the June meeting. After learning that a written agreement existed between Smith Petroleum and Busby, the Board tabled the issue once again to allow time for Smith Petroleum to produce the agreement. At the August 14, 2017, meeting, the Board denied the request to construct the sign, citing drivers' safety and Smith Petroleum's failure to seek Board approval before seeking a permit from the City.

¶8. Smith Petroleum later filed its Notice of Appeal and Bill of Exceptions. After hearing arguments from the Board and Smith Petroleum, the chancellor affirmed:

> The title of the agreement between Smith Petroleum and Busby is immaterial, rather the effect and substance of the agreement appears to be that of a lease agreement. A close look at the agreement reveals that it is, in fact, a conveyance of an interest in the leasehold by Smith Petroleum to Busby for a term of forty (40) years. Such a conveyance of the Sixteenth Section Leasehold interest requires board approval, as expressly set forth in the original lease agreement of January 6, 1992.

> The Lamar County School Board was within it's authority by withholding consent, as it relates to the instrument of conveyance between Smith Petroleum and Busby. The Board clearly articulated reasons for which its consent was being withheld and that decision should not be disturbed.

## STATEMENT OF THE ISSUES

I. **Whether the chancery court erred in finding that Smith Petroleum's license agreement with Busby was a sublease that required Board approval.**

II. **Whether the Board waived its argument that Smith Petroleum's agreement with Busby was a sublease.**

4

**III.** **Whether the chancery court erred in finding that the Board's decision was not arbitrary or capricious and did not deprive Smith Petroleum of its constitutional rights of equal protection.**

## STANDARD OF REVIEW

¶9.     "With regard to the facts of the case—both the evidentiary facts and the ultimate facts—our inquiry is limited to a determination of whether there be substantial credible evidence undergirding the School Board's findings." *Merchant v. Bd. of Trs. of Pearl Mun. Separate Sch. Dist.*, 492 So. 2d 959, 962 (Miss. 1986). If this Court finds substantial credible evidence, we will accept those findings. *Everett v. Bd. of Trs. of Meridian Mun. Separate Sch. Dist.*, 492 So. 2d 277, 283 (Miss. 1986). This Court will only intervene when "a school board has acted in a manner which is arbitrary and capricious and where its actions are not supported by substantial evidence . . . ." *Noxubee Cty. Bd. of Educ. v. Givens*, 481 So. 2d 816, 820 (Miss. 1985) (citing *Madison Cty. Bd. of Educ. v. Miles*, 252 Miss. 711, 173 So. 2d 425 (1965)).

## ANALYSIS

**I.**     **Whether the chancery court erred in finding that Smith Petroleum's license agreement with Busby was a sublease that required Board approval.**

¶10.     As provided by Mississippi Code Section 29-3-1, the Board holds Sixteenth Section lands in trust for the benefit of the public schools. As such, the Board, "shall have control and jurisdiction of said school trust lands and of all funds arising from any disposition . . . ." Miss. Code Ann. § 29-3-1(1) (Rev. 2010). The Board is required, "to manage the school trust lands and all funds arising therefrom as trust property." *Id.* The Board "shall assure that

adequate compensation is received for *all uses of the trust lands*, except for uses by the public schools." *Id.* (emphasis added).

¶11. This Court must consider whether the erecting and constructing of an "LED Showcase Sign" and Busby's ultimate use of the described 2,945 square feet constitutes "use of the trust land." Smith Petroleum and Busby argue that they entered into a "license agreement." The Board replies that the agreement is a renamed, repackaged sublease that requires prior approval from the Board.

¶12. The agreement at issue is titled "Exclusive Agreement to License." While Smith Petroleum and Busby argue that this document was a license agreement, language within the document belies their assertion. The term was described as a forty-year *lease*. Furthermore, Busby was granted the exclusive right to market, sell, and rent advertising space on billboards and to collect all revenue generated. Busby would only advertise for Smith Petroleum in the event space was available, and Smith Petroleum was to receive royalty payments. Busby also was tasked with maintaining the property and obtaining insurance. Busby was granted the right to pledge, assign, mortgage, or encumber the agreement in order to secure financing. Finally, the agreement was subject to transfer by attachment, execution, proceedings in insolvency or bankruptcy, or receivership.

¶13. The law on licenses and leases in Mississippi is limited. One Mississippi case has provided that the distinction between a lease of land and a license is that

> a lease conveys an interest in land, requires a writing to comply with the statute of frauds, and transfers possession, while a license merely excuses acts done by one on the land possession of another that without the license would be a trespass, and conveys no interest in the land[.]

6

*Hotel Markham v. Patterson*, 202 Miss. 451, 32 So. 2d 255, 256 (1947) (quoting *Baseball Publ'g Co. v. Bruton*, 302 Mass. 54, 55, 18 N.E.2d 362, 363 (1938)). The *Hotel Markham* Court went on to state that

> a license is defined to be an authority to do some act or a series of acts on the land of another without passing an estate in the land. It amounts to nothing more than an excuse for the act, which would otherwise be a trespass. A leasehold is an interest in real property; it carries a present interest and estate in the land and the main criterion is the right of possession of land.

*Id.* at 256. A treatise on landlords and tenants also provides

> [T]he distinction between a lease and a license is the right of the possession of the land. If a contract confers exclusive possession of the premises or a portion thereof as against the whole world, including the owner, it is a lease. If it merely confers a privilege or permission to use or occupy under the owner, it is a license.

52 C.J.S. *Landlord & Tenant* § 340, Westlaw (database updated Mar. 2019) (citations omitted).

¶14.    One primary criterion used to distinguish a lease from a license is the "right of possession of the land." The agreement between Smith Petroleum and Busby is an agreement to erect and construct a *permanent* structure on Sixteenth Section land. Busby was granted exclusive access and control of that billboard to the exclusion of Smith Petroleum, which cannot remove that physical structure until the expiration of the forty-year term. This agreement attempted to give Busby an undivided interest in the specifically described Sixteenth Section land without prior approval from the Board. We find that the trial court did not err in finding that the instrument was a sublease, which required Board approval.

**II.    Whether the Board waived its argument that Smith Petroleum's agreement with Busby was a sublease.**

¶15.    Smith Petroleum contends that the Board waived arguing that the agreement was a sublease. The Board argues that it maintained from the beginning, when it first contacted Busby and asked that construction cease, that the agreement was a sublease. It requested that Smith Petroleum and Busby attend the Board's meeting. Even after receiving the agreement, the Board still maintained the conveyance was a sublease based on the contents of the document. We find that the Board did not waive its argument that the agreement was a sublease.

###    III.    Whether the chancery court erred in finding that the Board's decision was not arbitrary or capricious and did not deprive Smith Petroleum of its constitutional rights of equal protection.

¶16.    The minutes of the August 14, 2017, meeting reflect that the Board reasonably exercised its statutory authority to manage its Sixteenth Section property. The Board discussed safety concerns, prior decisions denying requests to for similar signs, the glare of an LED sign, and the close proximity to the roadway. By a unanimous vote, the Board agreed to deny Smith Petroleum's request.

¶17.    The Board did not act in an arbitrary or capricious manner. The Board expressed concerns with safety, including the glare emitted by LED billboard, the proximity to the road traveled by students, and the condition of the road (the curve) where the billboard would be constructed. Smith Petroleum and Busby were not treated any differently than others who had requested permission to construct LED billboards. The Board's decision was consistent with its previous denials of such requests from Lamar Outdoor and Headrick's Signs. Smith

Petroleum's claim that the Board acted arbitrarily and capriciously and that its decision deprived Smith Petroleum of its constitutional rights is without merit.

## CONCLUSION

¶18.    The agreement between Smith Petroleum and Busby was a sublease that required prior approval of the Board. Once approval was sought, the Board did not act arbitrarily or capriciously in denying the request to construct an LED billboard on Sixteenth Section land. The learned chancellor did not err in affirming the findings of the Board, which were supported by substantial evidence. We affirm the judgment of the chancery court.

¶19.    **AFFIRMED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**