633 So.2d 1018 (1994)
James Rodney BYRD
v.
GREENE COUNTY SCHOOL DISTRICT.
No. 91-CC-0938.
Supreme Court of Mississippi.
February 3, 1994.
*1020 Chester D. Nicholson, Gail D. Nicholson, Nicholson & Nicholson, Gulfport, for appellant.
Perry Sansing, Brunini Grantham Grower & Hewes, Jackson, for appellee.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
McRAE, Justice, for the court:
This appeal arises from a July 30, 1991, award of damages by the Greene County Chancery Court in an appeal from an employee "reduction in force" proceeding conducted pursuant to the School Employment Procedures Law of 1977, Miss. Code Ann. § 37-9-101, et seq. (1990). The Greene County School District, on cross-appeal, asserts that the chancellor applied the wrong legal standard in making his determination that the hearing officer should have recused himself. The District further contends that the chancellor erred in finding that its dire financial situation was not "good cause" pursuant to Miss. Code Ann. § 37-9-59 (1990) for the rescission of a teacher's contract. The appellant and cross-appellee, James Rodney Byrd, asserts that the chancellor improperly recalculated the damages awarded him. Finding that the chancellor erred only in ruling that the hearing officer should have recused himself, we find that there was not good cause for the rescission of Byrd's contract and affirm the award of damages to him.

I.
James Rodney Byrd was employed by the Greene County School District from 1983 through 1988. He worked first as a teacher and coach. In 1985, after completing his Master's Degree in counseling and psychology, he was hired as an elementary and junior high school guidance counselor.
In March, 1986, the Greene County School District adopted its Reduction in Force Policy (RIF) in an attempt to comply with the State's Minimum Foundation Program funding levels. The procedures developed for the RIF were intended to balance the need for fairness to the teachers with the best interests of the school children when reductions were necessary.
The District had a long-standing practice of cutting timber from its Sixteenth Section land to meet any budget shortfalls or expenses not covered by ad valorem tax revenues. Since 1984, timber valued at $1,327,532.00 had been cut at the School Board's request, an average of $331,883.00 per year. In March 1988, the District began its annual negotiations with the Forestry Commission. In late May, the Forestry Commission completed its evaluation of the District's timberlands and recommended that timber sales should slow down to an average annual rate of $50,000.00.
At its February 12, 1988, meeting, the Greene County School Board acknowledged that a reduction in staff would be necessary to effect a cut in the District's budget over the next three years. The recommendations considered by the Board included a decrease in the number of guidance counselors. At that meeting, it was recommended that Byrd and another guidance counselor be hired instead as teachers.[1] The minutes of the February 12, 1988, Executive Meeting, indicate that the decision was made to rehire Byrd as a Guidance Counselor. On February 29, 1988, the Board held a hearing and unanimously voted to re-employ Byrd and seven other teachers and counselors in their present positions for the 1988-1989 school year.
On June 12, 1988, the Superintendent informed the Board that there existed a $401,095.00 shortfall in the District Maintenance budget. Because of the immediate need for deep cuts in the budget as well as the District's RIF policy, the Board voted not to *1021 renew the 1988-1989 school year contracts for Byrd and nineteen other school employees on June 27, 1988.
Byrd and his colleagues were sent written notice of the Board's decision on June 29, 1988. The letters stated that the action was not a reflection of past performance, but "was necessitated by the lack of funds in our district" and that the reduction in staff was "intended to get the school district operating at or about the funding level provided by the State of Mississippi in the Minimum Foundation Program."
Due process hearings for Byrd and others affected by the Board's decision were held during August, 1988. Ben J. Piazza, Jr., a Jackson attorney who represented the Hinds County School Board, served as the hearing officer. He was retained to serve in this capacity by the law firm of Brunini, Grantham, Grower and Hewes, which represented the Greene County School District in the proceedings. He had served as a hearing officer at the request of the Brunini firm on four or five other occasions when the firm was representing a school board. Because of the alleged relationship between Piazza and the Brunini firm, Tom Matthews, counsel for Byrd and five other teachers, conducted a voir dire to determine whether Piazza could function as a fair and impartial hearing officer. Piazza then denied Matthews' request to recuse himself.
In his written "Findings and Recommended Decision," the Hearing Officer found that pursuant to Greene County's RIF Policy and Miss. Code Ann. § 37-9-59, the District's financial crisis constituted "other good cause" for the termination or suspension of school personnel. Accordingly, he recommended that the Board accept Superintendent James' decision to terminate Byrd's contract. Without taking any formal action on the Hearing Officer's recommendation, the Board notified Byrd on September 29, 1988, that it had accepted the Superintendent's decision not to renew his contract for the 1988-1989 school year.
Byrd appealed the Board's decision to the Chancery Court of Greene County on October 5, 1988.[2] The chancellor found that a reasonable person would have doubted the impartiality of the hearing officer and ruled that Piazza should have recused himself. He further found that the District's financial crisis did not constitute "other good cause" for dismissal. Moreover, he found that the Board's action in terminating Byrd was not supported by substantial evidence and was, therefore, arbitrary. On November 27, 1990, the chancellor entered a judgment ordering the Board to pay damages in the amount of $32,564.50, plus legal interest, based on the sum Byrd would have received under a twelve month contract with the District for the 1988-1989 school year.
The District filed a Motion to Alter or Amend Judgment on November 19, 1990, requesting clarification of the method used to calculate damages. Further, it asserted that Byrd's employment contract with the Wayne County School District for the 1988-1989 school year served to mitigate his damages. Pursuant to Miss. Code Ann. § 37-9-101, the School Employment Procedures Act, the chancellor remanded the case to the School Board for a hearing on the issues of mitigation and the expenses incurred in reducing damages.
The Board held a hearing on July 16, 1991. The transcript of those proceedings reflects that neither Byrd nor his attorney were present at the hearing.[3] Comparing the salary Byrd actually earned under his 1988-1989 contract with the Wayne County School District with what he would have earned under a ten-month contract with Greene County, the Board found that Byrd was entitled to actual damages of $1996.00. The chancellor entered a final judgment on July *1022 30, 1991, incorporating by reference his November 7, 1990, findings of fact and conclusions of law, as amended to reflect an award of damages in the amount of $1,996.00 and legal interest.

II.
When considering teacher termination cases, this Court's scope of review is quite limited. In Hoffman v. Board of Trustees, 567 So.2d 838 (Miss. 1990), we explained that:
We accept our duty of deference to the hearing officials and this is no different when those officials are the ultimate legal authority for the school district. We look to see whether the decision of the Board is supported by substantial evidence, was arbitrary or capricious, was beyond the power of the Board to make, or violated some statutory or constitutional right of the complaining party. See, e.g. Harrison County School Board v. Morreale, 538 So.2d [1196, 1203 (Miss. 1989)]. Most assuredly, by way of contrast, the test is not what we would have decided had we been the trier of the issues in dispute.
Hoffman, 567 So.2d at 842. Pursuant to Miss. Code Ann. § 37-9-113(3) (1990), the chancery court is directed to review the entire record to determine whether a school board's decision "is unlawful because it is not supported by any substantial evidence and/or is arbitrary or capricious." Spradlin v. Board of Trustees of Pascagoula Municipal Separate School District, 515 So.2d 893, 898 (Miss. 1987). This Court employs the same standard of review when a school board decision is appealed from chancery court pursuant to Miss. Code Ann. § 37-9-113(5). Id; Claiborne County Board of Education v. Martin, 500 So.2d 981, 985 (Miss. 1986); Merchant v. Pearl Municipal Separate School District, 492 So.2d 959, 962 (Miss. 1986).

III.
Although the parties have raised numerous arguments on appeal and cross-appeal, we limit our discussion only to the questions of whether the hearing officer should have recused himself and whether implementation of a school district's reduction in force policy constitutes "good cause" for the termination or recision of a teacher's contract.
Citing Art. 6, Sec. 165 of the Mississippi Constitution, Canon 3(C) of the Code of Judicial Conduct and Jenkins v. Forrest County Hospital, 542 So.2d 1180 (Miss. 1989), the chancellor applied standards of judicial conduct and ruled that Piazza should have recused himself because "a reasonable person would certainly harbor doubts about the impartiality of the Hearing Officer in this case." On cross-appeal, the District correctly argues that the chancellor applied the wrong standard for determining whether recusal was proper.
Miss. Code Ann. § 37-9-109(c) (1990) provides that an employee who has received notice that his contract with a school district will not be renewed is entitled to receive "a fair and impartial hearing before the board or a hearing officer." This Court has established that there is "a presumption of honesty and integrity in those serving as adjudicators." Spradlin v. Board of Trustees of Pascagoula Municipal Separate School District, 515 So.2d 893, 898 (Miss. 1987); Dampier v. Lawrence County School District, 344 So.2d 130, 132 (Miss. 1977), citing Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). When a school board is acting in an adjudicatory capacity, the teacher must rebut this presumption by showing that the board members had a personal or financial stake in the outcome of the decision or that there was some personal animosity toward the teacher. Spradlin, 515 So.2d at 898; Dampier, 344 So.2d at 132, quoting Hortonville Joint School District No. 1 v. Hortonville Educational Association, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). Furthermore, a showing that the board was involved in the events preceding the teacher's termination is insufficient to rebut the presumption of honesty and integrity. There must also be a showing of either personal animosity or personal or financial interest in the outcome of the decision to overcome the presumption. Spradlin at 898.
This Court has recognized that administrative hearings "are not trials and ... are not governed by the same rules which apply in *1023 courts of law." United Cement Company v. Safe Air for the Environment, Inc., 558 So.2d 840, 842 (Miss. 1990). Accordingly, the same standard used to determine the impartiality of a board-conducted hearing has been applied to those hearings conducted by a hearing officer. United Cement, 558 So.2d at 842; Harrison County School Board v. Morreale, 538 So.2d 1196, 1202 (Miss. 1989). "Absent some showing of personal or financial interest on the part of the hearing officer or evidence of misconduct on the officer's part," the presumption of fairness and honesty is not overcome. United Cement, 558 So.2d at 842-43. See also, Hoffman v. Board of Trustees, East Mississippi Junior College, 567 So.2d 838, 841 (Miss. 1990).
By applying the standard applicable to judges, the chancellor applied the wrong standard in making his determination that the hearing officer should have recused himself. Utilizing the proper standard, however, we find that the presumption of the hearing officer's fairness and honesty has not been overcome. During voir dire, Piazza stated that he had acted as a hearing officer four or five times over a ten year period in cases where, as in the case sub judice, the Brunini firm represented the school board. He further stated that he could be fair and impartial in making a decision in this case. There is no evidence that he had any personal or financial interest in the outcome of the case or that he had any feelings of personal animosity toward Byrd. Accordingly, the chancellor erred in finding that Piazza should have recused himself.

IV.
Whether a school district has "good cause" to rescind a teacher's already-renewed contract because its financial woes warrant implementation of an established Reduction in Force Policy is a question of first impression before this Court. It points out a void in our statutory framework between the release of a teacher from his contract for conduct-related "good cause" pursuant to Miss. Code Ann. § 37-9-59 and the notice of non-reemployment or non-renewal of his contract for the successive school year prior to April 8 in accordance with Miss. Code Ann. § 37-9-105. While we affirm the chancellor's award of damages for breach of contract, we note that determination of if, and when, a school district may interrupt its contractual relationships pursuant to a RIF program is a matter of legislative concern.
Miss. Code Ann. § 37-9-59 (1990) sets forth grounds for the suspension or removal of a principal or teacher. It provides that "[f]or incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause the superintendent of schools may dismiss or suspend any certificated employee in any school district." Miss. Code Ann. § 37-9-59 (emphasis added). The parties dispute the interpretation of the phrase "good cause." Byrd argues that the provisions of the statute are triggered only by personal misconduct of the teacher, and thus "good cause" refers to some other dereliction of duty not explicitly enumerated in the statute. He cites Madison County Board of Education v. Miles, 173 So.2d 425 (Miss. 1965) for the proposition that "[t]he legislature undertook to make school principals and teachers reasonably secure in their jobs, subject to removal only for serious causes." Id. at 427. Despite its digression into a discussion the rule of "ejusdem generis" as applied in Miles, the District espouses the treatise definition of "good cause," which encompasses "any ground which is put forward by the [school board] in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the [board's] task of building up and maintaining an efficient school system." 68 Am.Jur.2d Schools § 68 (1973).
We find that § 37-9-59 is not applicable to the case sub judice. Byrd was neither suspended nor removed from his position because of some wrongdoing as contemplated by the statute. Nor can we say that his contract was rescinded pursuant to Miss. Code § 37-9-105, which provides for those cases where "a determination is made by a school district not to offer an employee a renewal contract for a successive year."[4] The Board had made a decision to re-employ *1024 Byrd on February 29, 1988. It did not send written notice to Byrd of its decision to rescind his contract until June 29, 1988, the day before the end of both the "scholastic year" and the "fiscal year." Miss. Code Ann. § 37-61-3. The Board's failure to provide notice prior to April 8, 1988, as required by § 37-9-105(c), places it outside the purview of that section's provision for nonrenewal of teacher contracts.
By not addressing RIF terminations, our existing statutory framework leaves a void in those instances where a school district does not discover until after April 8 that insufficient funds are available to cover teacher contracts. This Court has implicitly allowed factors such as a district's financial exigencies and declining student enrollment to stand as a basis for nonrenewal of teacher contracts. In Stone County School Board v. McMaster, 573 So.2d 753 (Miss. 1990), we determined that hearsay evidence of declining enrollment in a learning disabilities program and a lack of district funds to pay for teachers was sufficient to reverse a chancellor's reversal of a school board's decision to not renew the contract of a learning disabilities teacher. McMaster, 573 So.2d at 754. In Claiborne County Board of Education v. Martin, 500 So.2d 981 (Miss. 1986), we found that the School Board's "reduction in force" argument for the nonrenewal of a counselor's contract was a sham, but did not refute the idea that a bona fide financial crisis could warrant non-reemployment decisions. Where, as in Martin, there was evidence that a teacher's political activity was the real reason for the nonrenewal of his contract, "we recognized that, where a teacher has engaged in constitutionally protected political activity, and where the superintendent's reason for non-reemployment is shown to be false or a sham, the teacher gains the benefit of a rebuttable presumption that non-reemployment was for constitutionally impermissible reasons." Id. at 985-86. These cases, however, do not address the impact of budgetary concerns upon rescission of teacher contracts.
In the State of Washington, the statutory framework, like that in Mississippi, distinguishes between teacher discharges and non-renewals of contracts. However, while a teacher may not be terminated because of the school district's financial problems under the discharge statute (analogous to § 37-9-59), the same considerations may be cause for nonrenewal of his contract. Adams v. Clover Park School District No. 400, 29 Wash. App. 523, 526, 629 P.2d 1336, 1338 (1981); Barnes v. Seattle School District No. 1, 88 Wash.2d 483, 563 P.2d 199 (1977).
In those jurisdictions where, as distinguished from Mississippi, the statutes do not differentiate between teacher termination and non-renewal, courts have found that a school district's finances may warrant the rescission or non-renewal of teacher contracts. In Iowa, the court ruled that budgetary constraints and declining student enrollment may serve as "just cause" for the termination of a teacher's contract. Lee v. Giangreco, 490 N.W.2d 814, 818 (Iowa 1992); Smith v. Board of Education of Mediapolis School District, 334 N.W.2d 150, 152 (Iowa 1983). It cautioned that reductions in force for "`cause'" are not necessarily free from "arbitrary decision-making," and "school administrators may be called upon to articulate an objective basis for the selection, specifically for the purpose of verifying that the decision was based on rational and legitimate criteria." Lee, 490 N.W.2d at 818; In re Waterloo Community School District, 338 N.W.2d 153 (Iowa 1983). In Massachusetts, when there is an "actual need" for a reduction in force, school boards may even dismiss teachers without complying with statutory notice and hearing requirements. Martin v. School Committee of Natick, 395 Mass 461, 464, 480 N.E.2d 625, 627 (1985). See also Boston Teachers Local 66 v. School Committee of Boston, 386 Mass. 197, 216, 434 N.E.2d 1258 (1982) (requirements do not apply to dismissals based solely on budgetary factors provided that "such reasons are not proffered by the committee as a sham or subterfuge").
The premises underlying a contract between a school district and a teacher are indistinguishable from any other employment contract. The district promises to employ the teacher for a given term, subject to the terms of that contract. As consideration, the *1025 teacher promises to perform his job for the duration of the contract. Teacher contracts, as now written, make no provision for RIF programs or other financial hardships a district may encounter during the school year. Were we to accept the District's argument, teacher contracts would be vulnerable to rescission any time a school district found itself in financial straits. The legislature has not so provided. To the contrary, it is the school board and its officials who are personally liable for contracts entered into which exceed the funds available or budgeted. Miss. Code Ann. § 37-61-19 (Supp. 1992). It is within the province of the legislature to determine what effect, if any, a district's financial woes may have on teacher contracts and to grant the authority to amend those contracts accordingly.
Although the chancellor applied the incorrect standard in making his determination that the hearing officer should have recused himself, we affirm his award of actual damages in the amount of $1,996.00, based on the difference between Byrd's salary under the terms of the Greene County contract and the new agreement he reached with the Wayne County School District. In the absence of any statutory or contractual authority to so act, we find that the School District's eleventh hour realization of its financial predicament was not good cause for the rescission of Byrd's contract for the 1988-1989 school year. However, we recognize the need for legislation to make provisions for reductions in force arising after April 8.
Accordingly, we find that the chancellor's error was harmless and affirm the amended award of damages to Byrd.
AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.
HAWKINS, C.J., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in results only.
PRATHER, P.J., not participating.
NOTES
[1] This decision was made despite the Board's February 8, 1988 vote rejecting Superintendent Joe James' recommendation to hire Byrd as a teacher for the 1988-1989 school year. Byrd was notified of this action by letter dated February 10, 1988.
[2] On May 24, 1989, Byrd also filed suit in the United States District Court for the Southern District of Mississippi. He sought injunctive relief and attorney's fees, arguing primarily that his equal protection and first amendment rights had been violated. Abstaining pursuant to Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the federal court stayed any consideration of the claims raised pending the outcome of the State court case.
[3] The School District's attorney first contacted Byrd's attorney on April, 16, 1991, to set a hearing date. He apparently failed to respond to the Board's monthly requests for his cooperation.
[4] § 37-9-105 neither refers to § 37-9-59 nor incorporates the phrase "good cause."