# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-00394-SCT

*BOARD OF TRUSTEES OF THE JACKSON PUBLIC SCHOOL DISTRICT*

*v.*

*BISHOP EARL KNOX*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/22/94 |
| TRIAL JUDGE: | HON. W. O. DILLARD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES A. KEITH |
| | OTTOWA E. CARTER, JR. |
| | PERRY SANSING |
| | JOANNE NELSON |
| ATTORNEYS FOR APPELLEE: | NATHAN W. KELLUM |
| | STEPHEN M. CRAMPTON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 2/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/6/97 |

**BEFORE PRATHER, P.J., PITTMAN AND McRAE, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. INTRODUCTION

¶1. This Court is called upon in the present appeal to review the reversal by the Hinds County Chancery Court of the one-year suspension of Dr. Bishop Knox from his duties as principal of Wingfield High School by the Jackson School Board. The School Board suspended Dr. Knox in response to his actions in permitting the reading of prayers over the Wingfield High School intercom in spite of advice from the School District's counsel that the reading of the prayers was unconstitutional. This Court concludes that the lack of professional judgment shown by Dr. Knox in the present case constitutes "other good cause" entitling the School Board to suspend Dr. Knox under Miss. Code Ann. § 37-9-59 and that the Board did not act arbitrarily or capriciously in suspending Dr. Knox. This Court accordingly reverses the Chancellor's ruling and affirms the suspension of Dr. Knox by the School Board.

## II. STATEMENT OF THE FACTS

¶2. At the beginning of the 1993-1994 school year, Dr. Bishop Knox, then serving as principal of Wingfield High School, considered a request by several students that they be allowed to read a prayer over the school's intercommunication system (intercom) at the beginning of each school day. On November 2, 1993, Dr. Knox informed Dr. Sanders, serving as both assistant superintendent and deputy superintendent, of the students' plans to read the daily prayer. Although he was told by Dr. Knox that the proposed prayers were permissible under applicable legal authority, Dr. Sanders recommended that Dr. Knox consult Ms. JoAnne Nelson, the staff attorney, for her input. Dr. Knox indicated that he had conducted his own research into this issue and that he intended to proceed with plans for a vote regarding the prayers among the student body of Wingfield High.

¶3. Dr. Knox did consult Ms. Nelson, who informed Knox that she considered the proposed prayers to be unconstitutional, but she stated that she would conduct additional research and advise him accordingly. Dr. Knox presented the issue of the prayers to the student body of Wingfield High, who on November 5, 1993 voted 490-96 to allow the prayers to be read. Prior to allowing the prayers to be read for the first time, Dr. Knox awaited the opinion of Ms. Nelson, who responded on November 8, 1994 with an opinion that the *Clear Creek* decision permitting prayers at graduation (and cited by Knox in support of the prayers) was inapplicable to the present situation and that the proposed prayer was unconstitutional.

¶4. Dr. Knox mentioned the possibility of calling the prayers "announcements", but Ms. Nelson rejected this assertion as being inconsistent with legal precedent. Knox requested that Ms. Nelson research the matter further, and she agreed but advised him to contact the central office and the School Board before reading the prayers and thus subjecting the district to possible legal action. Dr. Knox attempted unsuccessfully to reach Dr. Sanders by telephone, and he informed Ms. Nelson that he planned to proceed with the prayers as planned. The first prayer, which was non-sectarian and non-prostelyzing in nature, was read on Tuesday, November 9, 1993.

¶5. The following day, Ms. Nelson reiterated her opinion that the prayer was unconstitutional. Dr. Knox asked her to supply a memorandum in support of that opinion, which she supplied that afternoon. Knox acknowledges that Ms. Nelson stressed that the district might have to pay opposing attorney's fees if a lawsuit were filed against the District and he acknowledges that Ms. Nelson instructed him to consult with the Superintendent prior to continuing the prayers. Nevertheless, prayers were offered on both November 10 and November 11 even though no consultation with the Superintendent was made. Deputy Superintendent Sanders placed Dr. Knox on administrative leave on November 11. Sanders testified that he considered this action necessary because Knox was "not taking heed of the directives that were given to him both verbally and in writing."

## III. STATEMENT OF THE CASE

¶6. On November 24, 1993, Superintendent Benjamin Canada of the Jackson Public School District dismissed Dr. Bishop Knox as principal of Wingfield High School. On December 15, 1993, the School Board modified the Superintendent's dismissal and suspended Dr. Knox without pay for the remainder of the school year. Dr. Knox appealed the Board's decision to the Hinds County Chancery Court, which on April 22, 1994 ordered the Board to reinstate Dr. Knox with full back pay and to prepare guidelines for school prayer consistent with that court's ruling.

¶7. On April 26, 1994, the Board filed a motion to stay execution pending appeal before this Court. This Court rejected the motion, ruling that the Board had not demonstrated a "strong likelihood of success on the merits" of their appeal. The present appeal represents the appeal on the merits of the Chancery Court's ruling in reversing Dr. Knox's suspension.

## IV. ISSUES

**A. A high school principal consciously disregarded his school district's position regarding a legal issue, as stated to him on four occasions by the district's attorney. As a result, the school board suspended the principal for "lack of professional judgment" pursuant to Miss. Code Ann. § 37-9-59 (1990), which permits suspension for "incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause." The question is whether "lack of professional judgment" can qualify as "other good cause" under § 37-9-59.**

**B. In setting aside the school board's action, the Chancery Court based its decision on the constitutionality of the principal's decision to allow a student to recite a prayer over the school's intercom system. Did the Chancery Court err by not applying the standard of review mandated by state law and instead basing its decision on an issue that was not before the court?**

**C. Was the school board's decision to suspend the principal supported by substantial evidence and not arbitrary or capricious?**

¶**8.** The Board's points of error are combined as they all deal with the issue of whether the suspension of Knox was properly overturned on appellate review by the Chancery Court. The primary issue in the present appeal centers around whether the Board acted within the authority granted it by Miss. Code Ann. § 37-9-59 in suspending Knox for his actions in permitting the reading of the prayers. In spite of the fact that the present case tangentially involves the much-litigated and discussed issue of the constitutionality of school prayer, the present case is in actuality one of statutory interpretation. Miss. Code Ann. §37-9-59, "Suspension or removal of principal or teacher; prohibited grounds for denying employment or reemployment," provides that:

> For incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause the superintendent of schools may dismiss or suspend any certificated employee in any school district.

This Court noted in ***Madison County Board of Education v. Miles***, 173 So.2d 425 (Miss. 1965) that the "legislative intent in enacting this section was to make teachers and principals reasonably secure in their jobs and subject to removal only for serious causes."

¶9. In ***Merchant v. Board of Trustees of Pearl Mun. Separate School. Dist***, 492 So.2d 959 (Miss. 1986) this Court affirmed the dismissal by a school board of a coach for a variety of insubordinate actions, including repeated violations of school financial policies. Specifically, this Court found that the coach had failed to account for monies belonging to the system by selling football jerseys to senior members of the team without authority and without turning the money into the district.

*Merchant*, 492 So.2d at 963. This Court noted that:

> Considering in the aggregate the matters outlined above, we have no authority to reverse. No objective observer could doubt that there was before the School Board substantial credible evidence suggesting the correctness of each finding. Nor could an objective observer dispute that the Board, considering these findings in the aggregate, could reasonably have concluded that incompetence, neglect of duty, and insubordination justif(y) dismissal within Miss. Code. Ann. §37-9-59 (Supp. 1985). *Merchant*, 492 So.2d at 963.

¶10. In *Byrd v. Greene County School Dist.*, 633 So.2d 1018 (Miss. 1994), this Court reversed the termination by a school district of a teacher's employment based on a financial crisis in the school district. This Court agreed with the teacher that the "other good cause" under § 37-9-59 is "triggered only by personal misconduct" on the part of the teacher and accordingly reversed the school district's dismissal of the teacher. *Byrd*, 633 So.2d at 1023. In *Spradlin v. Board of Trustees of Pascagoula Mun. Separate School Dist.*, 515 So.2d 893 (Miss. 1987), this Court affirmed the dismissal of an administrator based on a single misrepresentation which the administrator had made to the school board regarding a failure to comply with purchasing requirements. *Spradlin*, 515 So.2d at 897.

¶11. In the present case, the conduct by Dr. Knox arguably did not rise to the level of the insubordinate, given that he was never directly ordered by one of his superiors to not permit the prayers to be read over the intercom. However, Dr. Knox can be said to have demonstrated a lack of judgment in having the prayer read in face of serious concerns expressed by the school district's attorney that said activities could result in costly litigation for the school district. The Board argues that such a "lack of professional judgment" should be held by this Court to constitute "other good cause" permitting a school board to suspend a principal or teacher. The term "lack of professional judgment," however, is so broad as to be almost meaningless as a grounds for suspension or dismissal, and it is thus proper for this Court to instead examine the specific actions of Dr. Knox in the present case.

¶12. The Board is correct in asserting that the present case does not center around the issue of the constitutionality of prayer in schools. The Board is further correct in arguing that the Chancellor was incorrect in apparently basing his ruling in part upon his own strongly held personal views regarding prayer in school and a number of other issues irrelevant to the issue of whether the School Board exceeded its statutory authority in suspending Knox. The Chancellor's ruling is replete with the Chancellor's personal views regarding the alleged decline in moral values in this country's schools and a litany of other social and political issues.

¶13. The fact that the Chancellor gave improper weight to the issues surrounding the constitutionality of prayer in schools does not mean that his ruling in overruling the School Board's actions was incorrect. The dismissal of Dr. Knox by the Board should be affirmed if said action was supported by substantial evidence and was therefore not arbitrary and capricious, and this Court must also consider the intent of the Legislature in limiting the grounds for suspension or termination of a principal.

¶14. In the view of this Court, the actions of Dr. Knox in disregarding the legal advice of the staff attorney and proceeding to have the school prayers read in spite of a lack of any urgency for doing so, constitutes "other good cause" in support of his suspension by the School Board. In this age of litigious students and parents and of shrinking school budgets, a school district must have the ability

to control its employees in such a manner as to protect itself from having to defend against lawsuits which may arise from the conduct of a principal or teacher.

¶15. The school environment is unique with regard to the extent to which decisions by principals and teachers can give rise to lawsuits on constitutional and other legal grounds. The funds spent by a school district in responding to legal challenges constitute resources that could be spent much more productively in the education of students. A holding by this Court reversing the Board's suspension of Knox could have the harmful effect of encouraging actions by principals or teachers who desire to use their position to promote their own political, social or religious agendas or who merely desire to gain publicity for themselves. A holding by this Court excusing Dr. Knox's actions because he had not been specifically ordered to disallow the prayers could also set a harmful precedent by allowing teachers or principals to conduct sensitive activities as long as they had not been specifically ordered not to do so by their superiors.

¶**16.** This Court noted in ***Hoffman v. Board of Trustees, East Mississippi Junior College***, 567 So.2d 838 (Miss. 1990) that:

> Our scope of review in these matters is quite limited. We accept our duty of deference to the hearing officials and this is no different when those officials are the ultimate legal authority for the school district. We look to see whether the decision of the Board is supported by substantial evidence, was arbitrary or capricious, was beyond the power of the Board to make, or violated some statutory or constitutional right of the complaining party. . . . Most assuredly, by way of contrast, the test is not what we would have decided had we been the trier of the issues in dispute. ***Hoffman***, 567 So.2d at 842.

It can not be said that the Board's actions in dismissing Knox were arbitrary or capricious where Knox permitted the reading of the school prayers in spite of specific advice from the school district attorney that said actions were unconstitutional and had the potential to subject the school district to considerable expenses.

¶17. There are undoubtedly emergency situations in which a principal is required to make a hasty decision regarding an important matter without guidance from the school district officials, but the present case does not involve such a situation. It is true that the incident in question was an isolated one, and Dr. Knox's actions did not have the potential of placing any students in any real danger. This Court's holding in ***Spradlin***, however, indicates that the misconduct in question need not constitute a course of conduct, nor need any danger to the students arise as a result of the misconduct in question. Accordingly, the suspension of Dr. Knox by the School Board is affirmed and the chancellor's ruling is reversed.[(1)](#)

¶18. **REVERSED AND RENDERED.**

**SULLIVAN, P.J., PITTMAN, BANKS AND McRAE, JJ., CONCUR. DAN LEE, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND SMITH, JJ. MILLS, J., NOT PARTICIPATING.**

**DAN LEE, CHIEF JUSTICE, DISSENTING:**

¶19. With respect for the view of the majority, I believe they have misinterpreted the law of this State in finding that the "lack of professional judgment shown by Dr. Knox in the present case constitutes 'other good cause' entitling the School Board to suspend Dr. Knox under Miss. Code Ann. § 37-9-59 and that the Board did not act arbitrarily or capriciously in suspending Dr. Knox." This singular charge is not and should not be recognized by Miss. Code Ann. § 37-9-59 as a valid reason to suspend. Dr. Knox, although possibly deserving of some disciplinary action, was wrongfully removed from his contracted position. The School Board's actions were improper, arbitrary and capricious. I fear that the result reached by today's majority will result in an unreasonable and unnecessary expansion of the law relative to dismissals and nonrenewals of school employees and a move backward for employment law in the State of Mississippi. Therefore, I respectfully dissent.

¶20. The Jackson Public School District recommended that Dr. Knox be terminated from employment, citing the following reasons: insubordination, neglect of duty, intentional disregard of district policy and lack of professional judgment. Upon review of the record before it, the School Board rejected all but the last reason brought by the District, finding that Dr. Knox was not insubordinate, that he did not neglect any of his duties as principal and that he did not intentionally disregard any school district policy. Unfortunately, the Board did find that the actions of Dr. Knox "demonstrated a lack of professional judgment" and, upon such finding, they suspended Dr. Knox for the remainder of the school year.

¶21. Miss. Code Ann. § 37-9-59 provides the statutory authority for the dismissal or suspension of certificated personnel and it states, in part:

> [f]or incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause the superintendent of schools may dismiss or suspend any certificated employee in any school district.

Through this statute, the legislature attempted to make school principals and teachers reasonably secure in their jobs. They were subject to removal only for serious causes. ***Madison County Bd. of Educ. v. Miles***, 173 So. 2d 425 (Miss 1965).

¶22. The charge of "lack of professional conduct" is an ambiguous catch-all phrase and is not enumerated by statute as a ground for dismissal or suspension of certificated employees. Subsequently, the charge must fall under the enumerated ground of "other good cause." However, this Court has never held that a school employee's "lack of professional judgment" constitutes "other good cause" warranting suspension or dismissal. We have recognized insubordination, general uncooperativeness and incompetence and repetitious or persistent unprofessional conduct as "misconduct" included within the meaning of "other good cause." *See **Byrd v. Greene County School Dist.***, 633 So. 2d 1018 (Miss. 1994); ***Everett v. Bd. of Trustees***, 492 So. 2d 277 (Miss. 1986); ***Sims v. Bd. of Trustees***, 414 So. 2d 431 (Miss. 1982); ***Stegall v. Jones***, 241 So. 2d 349 (Miss. 1970).

¶23. This Court has limited the phrase "other good cause" to pertain only to charges of the same class as those specified. ***Byrd***, 633 So. 2d at 1023; ***Miles***, 173 So. 2d at 427. The term "lack of

professional judgment" does not even encompass the correctness of the decision itself, but merely whether poor judgment was employed in reaching the decision. Poor judgment in a given instance does not proximate the seriousness of the grounds enumerated by the statute. The Board itself found that "lack of professional judgment did not rise to the level of insubordination, neglect of duty or intentional disregard of school district policy." That being true, and recognizing the rule of *ejusdem generis*, "lack of professional judgment" is not the same kind, class or nature as the enumerated grounds for dismissal provided in Miss. Code Ann. § 37-9-59.

¶24. The actions by Dr. Knox do not rise to the level of the enumerated grounds for suspension or dismissal nor to they merit such disciplinary action. This case should be affirmed. Therefore, I respectfully dissent.

**ROBERTS AND SMITH, JJ., JOIN THIS OPINION**.


1. This Court declines to consider "points of error" purportedly raised by Knox regarding alleged violations of his due process rights[2]

2. Knox asserts that he was deprived of his right to procedural due process, including the right to question witnesses and to examine evidence prior to the hearing in question. Knox also asserts that he was denied a fair hearing based on the fact that one of the school board members had expressed the opinion in an interview prior to the hearing the opinion that the suspension of Knox was justified. - "
"