BRIDGES, J.,
for the Court:
¶ 1. William Crockett appeals the decision of the Board of Trustees of the Mound Bayou Public School District terminating him from his position as Superintendent of the Mound Bayou Public School District. We affirm.
FACTS
¶ 2. William Crockett was employed by the Board of Trustees of the Mound Bayou School District in 1992 to serve as interim superintendent. Subsequently, he was offered a three year contract to serve as the Mound Bayou School District Superintendent, which he accepted. Crockett’s contract was again renewed in 1996 for a four year term. However, in July 1998 the Board of Trustees terminated Crockett as superintendent. The Board cited the following reasons for Crockett’s termination:
1. Crockett deprived the School Board of an opportunity to make an informed decision whether to pledge and/or obtain funds pursuant to the Mississippi Adequate Education Program by June 30, 1998;
2. Dr. Crockett caused the improper transfer of district funds to his wife during August of 1993 that either was not approved by the School Board or approved by statement of misrepresentation or misinformation;
3. Dr. Crockett was dishonest in purchasing certain items with district funds, i.e., farm equipment and various laptop computers which cannot be accounted for in the district; and
4. Dr. Crockett neglected his duty and failed in his responsibility to the School Board to send in writing a non-renewal letter to Henry Ward and Ottowa Carter by the deadlines as established by Mississippi law and as a consequence, exposed the District to additional costs and possible legal liability.
Following his termination, Crockett requested a hearing pursuant to statute. The hearing was held on September 17, *1032 and October 1 and 2, 1998. Within thirty days of the hearing, the Board voted to uphold Crockett’s termination.
¶ 3. On appeal to the Chancery Court of Bolivar County, Crockett asserted that he did not receive a fair hearing in violation of his constitutional due process rights, that there was insufficient evidence to support the allegations that school district funds were used to purchase farm equipment and lap top computers, that there was insufficient evidence of an inappropriate transfer of district funds to Mrs. Crockett, that there was insufficient evidence of the allegation that Crockett had deprived the School Board of information to obtain Mississippi Adequate Education Program (MAEP) funds and that the evidence presented was insufficient to establish that Crockett was neglectful in submitting non-renewal notices to two school district teachers. The chancellor determined that there was insufficient evidence presented regarding the issues of the farm equipment and the lap top computers, but did find that there was sufficient evidence presented that Crockett had inappropriately paid his wife for her participation on a voluntary school district special assignment team, that he did not send non-renewal notices to two teachers as he was required to do, and that he failed to timely put together a long range planning packet for the purpose of submitting an application to the State of Mississippi for MAEP funds. Accordingly, the chancellor affirmed the Board’s decision terminating Crockett on those grounds. From the chancellor’s affirmance, Crockett appeals to this Court.
ISSUES
¶ 4. Crockett first argues that he did not receive a fair hearing in violation of his constitutional due process rights on the basis that (1) the entire Board was not present during all sessions of the hearing and that the Board’s decision was made without the benefit of reviewing the transcript of the hearing in violation of Mississippi Code section 37-9-111(4), as amended, and (2) because of ex paHe communications between a witness, the Board’s attorney and the hearing officer. Next, Crockett contends that there was insufficient evidence to show that the disbursement of district funds to his wife, a school district employee, was improper. In addition, Crockett maintains that the evidence was insufficient to establish that he failed to act in accordance with Board directives regarding the preparation and submission of an application packet for the district’s application for educational bond funds. Lastly, Crockett asserts there was insufficient evidence showing that he intentionally failed to submit non-renewal notices to two teachers despite directives from the Board to do so.
Law on Termination
¶ 5. “Dismissal of certificated school employees is governed by Miss Code Ann. § 37-9-59 (Supp.1992), which provides good cause reasons for dismissal as well as the right to a public hearing.” Harris v. Canton Separate Pub. Sch. Bd. of Educ., 655 So.2d 898, 901 (Miss.1995). The hearing procedures for such terminations are those set out in Mississippi Code section 37-9-111, (Rev. 1996). Section 37-9-111(4) establishes that the dismissed employee is entitled to a hearing before the school board (or a hearing officer), at which the employee may “present matters relevant to the reasons given” for the board’s decision, present witnesses and other evidence on his own behalf, and cross-examine the witnesses against him. Id. Even further, the statute provides that the school board can base its decision solely on the matters presented before it and notify the employee in writing of its final decision. Id..
¶ 6. Pursuant to the statutory scheme, the hearing officer does not act as the ultimate finder of fact and does not have any decision-making authority on the ultimate issue. Miss.Code Ann. § 37-9-111(4) (Rev. 1996). The hearing officer’s statutory role is to maintain order at the *1033 hearing and assure that the evidence presented by the participants is limited to those matters applicable to the issues. Id. Specifically, section 37-9-111(4) provides that “[t]he board shall review the matters presented before it, or if the hearing is conducted by a hearing officer, the record of the proceedings and, based solely thereon, conclude whether the nonreemployment determination is a proper employment decision.... ” Miss.Code Ann. § 37-9-111(4) (Rev. 1996).
¶ 7. Once the school board determines that the termination was proper following a hearing, the school employee may appeal the decision to the appropriate chancery court. Miss.Code Ann. § 37-9-113 (Rev. 1996). The chancery court’s appellate review is limited, however, to a review of the record before the school board. Id. According to the statute, the chancellor is required to determine if the school board’s actions in terminating an employee were unlawful or because such actions were (a) in violation of some statutory or constitutional right of the employee; (b) arbitrary or capricious; or (c) not supported by substantial evidence. Miss.Code Ann. § 37-9-113 (Rev. 1996). If the employee elects to appeal the chancery court’s decision, then this Court is required to employ a similar standard of review. Harris, 655 So.2d at 901.
RESOLUTION OF THE ISSUES

1. Fair hearing

a. Presence of Ftill Board

¶ 8. Crockett’s hearing took place over the course of three days. Of the five Board of Trustees members, only three were present on the last day of the hearing. All five were present during the first two days of the proceedings. Crockett contends that he did not receive a fair, hearing because the Board voted to affirm his termination when the full board was not present on the last day of testimony and those absent had not read the transcript of the proceedings on the last day of testimony. Crockett contends that, consequently, the Board’s action in voting to affirm his termination violated his due process rights to a fair hearing.
¶ 9. Immediately after the hearing concluded on October 2, 1998, a request was made for a transcript of the hearing to be provided to the Board within ten days of the last day of the hearing. On October 14, 1998, at a regularly scheduled meeting at which all five members of the Board were present, the Board permitted Crockett to present closing statements pertaining to the evidence presented at his termination hearing. After approximately twenty-seven days had passed and despite several requests for the transcript, the Board convened and voted to affirm its decision to terminate Crockett. Four Board members voted to affirm the termination decision, and one voted against Crockett’s dismissal. The Board member voting against dismissal was one of the two members not present on the last day of the hearing.
¶ 10. The Board maintains that pursuant to statute it was required to make a decision on or before thirty days following the hearing. See Miss.Code Ann. § 37-9-111(4) (Rev. 1996). The Board points out that had it waited for the transcript, Crockett would have likely argued on appeal that his due process rights were violated because their decision would have come after the thirty-day deadline had passed. Additionally, the Board asserts that even if the two votes of the Board members absent from the last day of the hearing were against Crockett’s termination, the majority of the Board voted to affirm Crockett’s termination. Accordingly, the Board asserts that if any error occurred, it was procedural and Crockett suffered no prejudice therefrom.
¶ 11. On this issue, the chancery court concluded: “Because the statute only requires that the School Board review matters before it, the absence of members from one of the three hearings is harmless *1034 in light of the fact that Dr. Crockett gave closing arguments to the entire School Board prior to the School Board’s final order.” We agree with the chancellor. Crockett acknowledged that all Board members were not present on the last day of the hearing and requested to address the full Board prior to its rendering a final decision in the matter. On October 14, 1998, Crockett was given that opportunity to address the Full Board, and on October 27, 1998, the Board rendered its decision. Admittedly, two of the Board’s members were not able to read the final day of testimony prior to voting as the transcript had not yet been provided by the court reporter. Under these circumstances, we find that any error that occurred was harmless. All of the members of the Board were present when Crockett was allowed give his closing statements regarding the allegations against him. Crockett has not shown that he suffered any prejudice as a result of the absence of two of the Board members. The remaining three members, the majority, who were present during all of the testimony offered by Crockett, voted to affirm his termination.
¶ 12. There is no evidence that the Board of Trustees did not substantially and in good faith attempt to comply with the provisions of the statute requiring them to make a decision based on facts in the record. The evidence does show that the Board sought to comply with the other statutory requirement that they make a final decision within thirty days of the hearing. Because Crockett did not suffer prejudice from any error that may have occurred here, we find that Crockett’s rights to due process were not violated.

b. Ex parte communications

¶ 13. During the second day of testimony, the hearing officer revealed to Crockett, on the record, that he had contacted the Board’s counsel for the purpose of assuring the attendance of one of the witnesses who had previously testified. The hearing officer, who at that time had the understanding that he would be making a recommendation to the Board, explained that he had a few questions for witness Anderson and sought to assure his presence at the next day of testimony. On the next occasion that testimony was heard, witness Anderson testified and answered questions posed by the Board’s attorney and the hearing officer. Additionally, counsel for Crockett was allowed unrestricted cross-examination. Nevertheless, Crockett contends that this conduct was inappropriate. Crockett asserts that the hearing officer suggested to the Board’s attorney that witness Anderson be recalled as a witness and gave to the Board’s attorney those questions the hearing officer intended to ask Anderson. Crockett argues that the hearing officer’s actions tainted the process of him receiving a fair and impartial hearing.
¶ 14. In response, the Board maintains that in the communications nothing involving the merits of the case was discussed and only a discussion concerning the witness’s appearance at the hearing occurred. The Board points out that it was the hearing officer who disclosed the communication between himself and counsel for the Board and the substance of such conversation. In addition, the Board asserts that it is significant that the hearing officer made no recommendation or had any stake in the outcome of the hearing because the Board served as the ultimate fact-finder.
¶ 15. Hearing officers are entitled to “a presumption of honesty and integrity.” Spradlin v. Board of Trustees of Pascagoula Mun. Separate Sch. Dist., 515 So.2d 893, 898 (Miss.1987). Administrative hearings are not trials. Byrd v. Greene County Sch. Dist., 633 So.2d 1018, 1023 (Miss.1994). Thus, the traditional rules and formalities which apply in courts of law do not govern such hearings. Id. Accordingly, to determine that Crockett’s due process rights were violated by the ex parte communications, he was required to show some evidence overcoming the presumption of honesty and integrity granted to administrative hearing officers. Crock *1035 ett has failed to come forth with any evidence that the hearing officer in this case had any personal or financial interest in the outcome of the hearing or that the officer harbored any feelings of animosity towards him. Crockett was given full due process and received a fair and impartial hearing.

2. Mississippi Educational Program funds

¶ 16. The Board complained that Crockett deprived them of an opportunity to make an informed decision in obtaining MAEP funds. To obtain MAEP funds in 1998, the school district was to submit an application along with a long range plan for use of the requested funds. A school district had the option of applying for “bond-money” funds or “cash-money” which had other requirements. As explained at the hearing, if a school district opted for the bond-money, there was a twenty year pay-off for the funds. The “cash-money” was not required to be repaid by the school district, rather the State would finance and pay off any loan. There was a June 30, 1998 deadline for filing the necessary paperwork for the bond-money. The other, however, was offered yearly. The Board argues that through its decisions reflected in its meeting minutes, it preferred the bond-money alternative and expressed such to Crockett. The Board maintains that it did in fact vote to participate in the bond options program for the state funds. Because Crockett held the position of superintendent, he had the duty of producing whatever the applications for such money required. Crockett did not prepare the documents to meet the June 30, 1998 deadline and this, the Board contends, is one of the reasons for his termination.
¶ 17. Crockett asserts that the hearing evidence clearly shows the lengths which he took to educate the Board on the matter. Crockett points to evidence from the hearing which showed that he had had experts present the advantages and disadvantages of the MAEP program before the Board. One of the Board’s members, Mrs. Lillie Clifton, testified as to Crockett’s actions in this matter and indicated that Crockett had kept the Board apprised as to its choices regarding the MAEP funds. She testified that the Board did not give Crockett a firm directive to apply for the bond funds until the time immediately proceeding the deadline. Clifton testified that various others were bought in by Crockett to educate the Board on MAEP funds and how the funding programs operated. In addition, the evidence showed that Crockett obtained quotes for work that was needed on school facilities and that he had met with an architect about the needed renovations.
¶ 18. The evidence, however, supports the Board’s decision to base its termination decision on the inaction of Crockett to gather the necessary documents and submit an application for the MAEP funds. On December 10, 1997 and as reflected in its meeting minutes, the Board adopted a resolution of intent expressing its interest in pursuing the bond option for the MAEP funds. Crockett secured legal representation for obtaining the bond funds. On June 10, 1998, a board member asked Crockett about the MAEP funds and Crockett expressed that he was not in favor of the school district obtaining funds through the bond option. Crockett did not want the school district going into debt as he had spent his years as a superintendent on getting the district out of debt. Nevertheless, Crockett acknowledged that it was his job to submit the application for the state funds once the Board had decided to apply for the money. Also, Board minutes reflect that Crockett addressed the Board concerning the application for the funds. On June 25, 1998, the Board approved a directive to “Formulate a plan to the State Department of Education for our District’s Adequate Education Funding immediately.” Notwithstanding Crockett’s efforts in gathering information on behalf of the Board, a long range plan was not put *1036 together until after the June 30, 1999 deadline.
¶ 19. The evidence on this issue is in conflict. Crockett argues that he did inform the Board of their options but that he was never given instructions that the Board definitely wanted to pursue the bond-option for the MAEP funds. The Board concludes otherwise and maintains that early in the process it informed Crockett that it elected to pursue the bond-money option. Because there is substantial evidence in the record to support the Board’s determination that Crockett neglected to proceed with the process of submitting an application for the MAEP funds after the Board had expressed its desire to do so, we are without authority to reverse the Board’s decision.

8. Non-renewal letters

¶ 20. One of the reasons the Board cites for Crockett’s termination was his failure to issue non-renewal letters to two school district teachers, Mr. Henry Ward and Mr. Ottowa Carter. According to the Board, Crockett’s neglect in timely issuing the letters cost the school district money and subjected it to legal liability.
¶ 21. In response, Crockett ■ contends that the Board put forth no credible evidence of neglect on his part. Crockett explained that Ward was hired on a partial contract in March of 1998-only days before the statutory April 8, non-renewal deadline for a district’s option of not renewing an employee’s contract. As to Carter, Crockett contends that after he recommended to the Board that his contract not be renewed and the Board agreed, he received two calls from two different Board members stating that they wanted Crockett to employ Carter elsewhere in the school district. Consequently, Crockett explained that he did not submit a non-renewal notice to Carter because he intended to place Carter in another position in the school district pursuant to the requests of the Board members. Crockett maintains that the Board’s decision to terminate him based on these facts is arbitrary and capricious.
¶ 22. The Board voted to not renew Carter’s contract, and despite requests from two Board members to find employment for Carter elsewhere in the district, Crockett should have delivered to Carter the non-renewal notice. Consequently, the district renewed Carter’s contract for another year. As to Ward, the Board likewise voted not to renew the contract it offered him for the remaining portion of the current school year. Crockett conceded that he did not send Ward a non-renewal notice.
¶ 23. Substantial evidence was presented at the hearing in this matter to support the Board’s termination of Crockett based in part on the reason that he failed to follow the Board’s directives in forwarding non-renewal letters to Ward and Carter. Accordingly, we find no error on the part of the Board in this regard.
A Use of school district funds
¶ 24. In dismissing Crockett, the Board cited as a reason for Crockett’s termination, his improper disbursement of school district funds to his wife. A long time employee of the school district, Mrs. Hannah Crockett participated in 1993 in a multi-district special education screening team. Crockett explained that it was his understanding that she was permitted to submit a claim for that time she spent working on the project. Crockett contends that the matter was placed on the docket of claims in the ordinary course of business by the district’s business manager. The Board approved the claims and Mrs. Crockett was paid accordingly from the school district’s maintenance fund. Crockett argues that the record clearly reflects no wrongdoing on his part. Alternatively, he asserts that this matter took place during a period of his previous employment contract and should not serve as a breach of contract under his present contract with the school district.
*1037 ¶ 25. The Board argues that the $990 that was paid to Mrs. Crockett was inappropriate because her special appointment was a volunteer position. The matter came to the Board’s attention in a report from the State auditor in late 1998 or early 1999. Others on the same team were not paid expenses for their time and were volunteers. Additionally, the Board contends that the evidence was sufficient that such payment was not put through the ordinary procedures for paying expenses. In addition, the Board suggests that Crockett waived this issue because when it offered to put on testimony of when the Board received notice of the payment to Mrs. Crockett, Crockett objected to the testimony challenging that it was irrelevant.
¶ 26. Notwithstanding the Board’s position, we conclude that the Board acted arbitrarily and capriciously in relying on this matter as a ground for Crockett’s termination because the Board had notice of the payment in 1993 when the matter was presented to them for approval of the payment. In our review of the evidence, it appears that such claim was put through the ordinary course of payments. In the standard course of paying school district bills and invoices, Crockett submitted Mrs. Crockett’s claim as he would any other. Her claim was grouped with others and given to the Board as usual, five days in advance of the a regularly scheduled Board meeting. As the standard procedure, the Board had five days to question any of the payments being made. While the claim was submitted grouped with other claims for the Board to approve, the evidence did not show that another method existed for paying claims such as Mrs. Crockett’s.
¶ 27. While the Board is charged with obligation of fact finding, we are authorized to reverse a decision of the Board where there is insufficient evidence to support their conclusion or where we determine that the Board acted in an arbitrary and capricious manner. Harris, 655 So.2d at 901. While this transaction occurred in a previous contract period, it also occurred over five years prior to the other activities for which the Board relies on for their termination decision.
¶ 28. The Mississippi Supreme Court has defined arbitrary and capricious as follows:
An act is arbitrary when it is not done according to reason or judgment, but depending on the will alone. ‘Capricious’ [is] defined as any act done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.
Burks v. Amite County Sch. Dist., 708 So.2d 1366, 1370 (Miss.1998). In cases involving school employees, the Mississippi Supreme Court has affirmed the principle that actions occurring in a previous contract period are admissible at hearings and may serve as a part of the foundation for an employee’s dismissal especially where the conduct was continuing and where the employee had previously been reprimanded for the conduct. See Merchant v. Board of Trustees of Pearl Mun. Sep. Sch. Dist., 492 So.2d 959, 964 (Miss.1986); Jackson v. Hazlehurst Mun. Sep. Sch. Dist., 427 So.2d 134, 136 (Miss.1983). Here, we find that the Board had notice of the transfer and that a substantial period of time had passed such that reliance on this ground for Crockett’s termination was done, by the Board, in a manner based more on will than on sound reason and judgment.
¶ 29. We note that the other allegations of the Board regarding the inappropriate use of district funds for farm equipment and a computer were not shown by the testimony. No testimony or evidence whatsoever was presented by the Board of any misappropriation of funds for farm equipment. Regarding the computers, the school district’s new business manager, David Anderson, testified that there were two laptop computers purchased by the school district but the inventory documentation and their whereabouts were un *1038 known. Anderson admitted that he had never asked Crockett for the computers. Both computers, however, were accounted for at the hearing. Joe Jennings, the school district’s Federal- Programing Director, Technology Coordinator and Property Manager explained that Crockett and he both used a portable computer owned by the school district for doing work at home and while away on school district business. Jennings showed how and where the computers were inventoried and both were produced at the hearing. Jennings and Crockett both testified that neither had been asked about the whereabouts of the computers. Consequently, the chancellor ruled that there was insufficient evidence on these issues to assert them as a valid ground for Crockett’s dismissal.
¶ 30. These charges and the lack of evidence are meaningful here because it evinces the Board’s conduct in seeking to mound its charges against Crockett. Not only was the evidence insufficient to support any wrong doing on the matter involving the computers, but also there was no evidence produced at the hearing concerning farm equipment. Regarding the payment to Mrs. Crocket, we find that Board’s attempt to rely on an incident so remote in time as this one is, and one about which it was charged with the responsibility of knowing, as a basis for Crockett’s termination amounts to conduct that is arbitrary and capricious.
¶ 31. Though we find that the Board acted arbitrarily and capriciously in relying on this matter as a grounds for Crockett’s termination, we nevertheless conclude that the two other reasons cited by the Board, that is, the neglect of duty regarding the funding issue and the two instances of failure to forward non-renewal letters to teachers, are sufficient to support the Board’s decision to terminate Crockett for cause.
¶ 32. THE JUDGMENT OF THE BOLIVAR COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., AND LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ, CONCUR. SOUTHWICK, P.J., AND IRVING, J., NOT PARTICIPATING.